CHARLES H. MERRITT v. GREAT NORTHERN RAILWAY COMPANY.[1]

December 6, 1900.

Nos. 12,271—(101).

### Management of Railway Train—Company Rules.

In the operation of railroad trains, where the company rules charge both the conductor and engineer with the control and management of their trains, if one assumes to attend to an act within their common line of duties, which act may be performed by one, the other may rely upon the presumption that such act was properly performed. Rule applied in this case, and *held* that the engineer had a right to assume that the conductor and trainmen had repaired a leaky air pipe without cutting off the air brake from part of the train.

### Personal Injury to Engineer—Contributory Negligence.

The plaintiff, as an engineer, was by the rules of the company made responsible for the control and management of his train; was obliged to make proper tests of the air brakes at grades and stations, and have his train under control while approaching stations; running an inferior extra train, he was charged with the duty of knowing the position of all regular trains, they having the right of way. Having approached a station at the rate of twenty-five miles an hour, and collided with a regular train, *held*, under the circumstances of this case, that he was guilty of contributory negligence.

### Judgment for Defendant.

Such negligence in the care and management of his train appears conclusively from plaintiff's own personal statements and theory of the accident, and there is no reasonable probability of a different line of evidence or theory being produced in good faith at another trial, and the order for judgment notwithstanding the verdict should be sustained.

Action in the district court for Kandiyohi county to recover $25,000 damages for personal injuries. The case was tried before Qvale, J., and a jury, which rendered a verdict in favor of plaintiff for $5,000. From an order granting a motion for judgment in favor of defendant notwithstanding the verdict, plaintiff appealed. Affirmed.

*F. D. Larrabee,* for appellant.

*C. Wellington,* for respondent.

[1] Reported in 84 N. W. 321.

LEWIS, J.

Plaintiff was an engineer in the employ of the defendant company. On February 27, 1899, he was ordered to run an extra freight train from St. Cloud to Clearwater Junction. The train consisted of five box cars and a caboose, which, with the exception of the latter, were equipped with air brakes. The train crew consisted of the plaintiff, as engineer, a fireman, two brakemen, and a conductor. A short distance out from St. Cloud the air pipes sprung a leak, and the train was stopped. The conductor and brakeman, who were at the rear end, instead of repairing the leak, cut off the air from the three rear cars, leaving the air brake to apply to the two front cars only, but they did not notify the fireman or engineer of that fact. The train proceeded, and about two hours later was approaching Osseo station at a rapid speed, when, discovering that a train was upon the main track in front of him, the plaintiff, seeing that a collision was inevitable, applied the air, and jumped from the engine, receiving the injuries complained of. Plaintiff had a verdict, the court granted defendant's motion for judgment notwithstanding the verdict, and plaintiff appealed.

The questions presented for review in this case must be considered with reference to the order for judgment non obstante. To sustain this order, it must conclusively appear that the defendant was not guilty of negligence, or, if such is not the fact, then that the plaintiff was guilty of contributory negligence. Such result must not only be established conclusively from the evidence taken upon this trial, but it must also appear that from the very nature of the charge made against the defendant, and the circumstances connected with it, there is no reasonable probability that upon another trial any substantially different evidence would be produced.

Appellant's theory of recovery is that if the air brakes had been adjusted to, and not cut off from, the three rear cars, he could have controlled and stopped the train in time to avoid the collision, and that so arranging the brakes without notifying him constituted an act of negligence on the part of the defendant which was the proximate cause of plaintiff's injuries. The rules of the company provided that the conductors should be responsible for the safety,

prompt movement, and proper care of their trains, and for the conduct of the men employed thereon; also that they must be familiar with the duties of the enginemen, firemen, baggagemen, and brakemen, and enforce the rules applicable to them upon their trains. As to enginemen, the rules make them equally responsible with the conductor for the safety of the train, and for the movements of the same in strict compliance with the rules, and they must decline to obey any orders which involve peril to the train or violation of the rules.

"When there is no conductor, or he is disabled, the engineman will have charge of the train, and must be governed by the rules prescribed for conductors."

"Before leaving a terminal station the engineman must apply the air brakes and allow them to remain long enough for the inspectors or trainmen to see that they are in perfect working condition throughout the train, and, when cars have been attached or taken out, the brakes must again be applied to know that they are in working order before proceeding on the trip. In making regular stops, brakes must be applied in such a manner as to avoid discomfort to passengers or injury to the equipment. Enginemen must also know that the air signal is in proper working order."

"Conductors and enginemen will be held equally responsible for the violation of any of the rules governing the safety of their trains, and they must take every precaution for the protection of their trains, even if not provided for by the rules."

It is evident from these rules that the conductor and engineer, and to some extent the trainmen, are expected to co-operate together in the control and management of the train, while both the conductor and engineer are charged with the duty of knowing the condition of the appliances. But, if one assumes to perform an act in the line of duty pertaining to both, the other would be justified in assuming that such act was properly performed. In this case, if the repair to the air pipe was attended to by the conductor or under his supervision, and if the plaintiff had a right to assume that the three last cars had been adjusted to the air, then, in so far as such act on the part of the conductor contributed to the injury, defendant would be responsible. However, an examination of the evidence leads to the inevitable conclusion that the incident above stated was not the proximate cause of the accident, and, on the

contrary, establishes conclusively the negligence of plaintiff in the control and management of his train.

The train in question was an extra, having no privileges in respect to regular trains, which have the right of way. The rules provided that all trains must approach all stations and water tanks between stations, under control, and so proceed until the track is plainly seen to be clear. The responsibility for a collision at a station, or at a water tank between stations, rests with the following or incoming train. Enginemen must exercise good judgment in stopping and starting the train, keep a constant lookout on the track for danger signals and obstructions, must test the air brakes at least one mile before reaching railroad crossings, drawbridges, and before going down heavy grades and other hazardous places, and, in case they do not hold, must at once signal for brakes. Such test to be made by applying the brakes with sufficient force to ascertain whether they are working properly. Other requirements as to keeping in proper position fixed signals at stations and junctions do not relieve trainmen from observing all rules in regard to the protection of their trains. Again, enginemen are required to look back frequently while running to see that all is right, and observe whether watchmen and brakemen are at their posts, and report any neglect of duty; are required to understand the working of the air brakes and air signals, and to have in their possession a copy of the rules relating thereto. They must have a copy of the latest time-table, and a full set of signals; must examine the bulletin board in the engine house, and compare time with the conductor of the train before starting on each trip. Plaintiff was familiar with all of these rules.

According to the plaintiff's testimony, he was watching for the station; was within twelve hundred or fourteen hundred feet from it when he first saw the red lights on the caboose of the standing train. He had been watching for the mile board as he approached the station, but did not see it, for the reason that it was snowing and blowing. At the time he saw the red lights he was running about twenty-five miles an hour, and, after applying the air and reversing the engine, the speed was reduced to about sixteen miles an hour at the time his train collided with the standing train. He

stated, on cross-examination, that he had run through several stations without applying the air brakes, and that in passing over a heavy grade he had made no application of the air to test them. The whistle was sounded at the mile post, although plaintiff did not recollect that he did it. He made no call for brakes as he approached Osseo. Says he did not remember seeing switch lights. Although there was a curve in the track approaching the station, the view of the switch lights and station by the engineer as he approached was unobstructed for at least two thousand feet. The undisputed evidence is to the effect that the switch lights were burning, and that one was located about six hundred feet west from the station; also that the force of the collision was so great as to wreck the forward train.

The rules above mentioned are required for the purpose of placing the responsibility of the management of trains upon those who are directly in control. Such rules are absolutely necessary, are reasonable, and plaintiff was bound to control his train accordingly. The forward train was a regular freight train on schedule time, lawfully, under the rules, standing upon the track at Osseo. Plaintiff was bound to know that fact, and act accordingly. He could know it by consulting the time-table or schedule, which he had, or was bound to have, in his possession. He was bound to approach all stations with his train under control, and to know whether his train was under control by a proper testing of the brakes. He had failed to make such tests. The fact that the three rear cars were cut off from the air might not have been discovered by a mere application to see if the air worked, but, if applied for the purpose of finding out whether the train was under control at the grade and at stations, he would have discovered to what extent his train was under control, and, if more time were required to stop the train by reason of the change in the brakes, the plaintiff would have found out the fact, and been prepared to act accordingly. The fact that it was dark and snowing only increased the necessity of more vigilance on his part. If plaintiff was not very familiar with the road over which he was running, its grades, stations, and danger points, it was no excuse for rushing blindly ahead. Under his orders and

the rules, it was his business to make himself familiar, and to take the necessary time to become so.

We have taken plaintiff's own story, made all allowances, and can come to no other conclusion than that the plaintiff is himself responsible for his injuries; and, as this conclusion is reached from the consideration of his own theory of the accident and from his own personal statements, it follows that there is no probability of a different line of evidence or a different theory being evolved in good faith at another trial.

Order affirmed.