ALICE J. GREEN v. BRAINERD & NORTHERN MINNESOTA RAILWAY COMPANY.[1]

January 31, 1902.

Nos. 12,736—(154).

Railway—Obedience of Rules and Regulations.

It is the duty of the employees of a railroad company implicitly to obey all reasonable orders or rules, and a failure so to do will defeat recovery by an injured employee, if his disobedience was the proximate cause of his injury, unless obedience was impracticable under the circumstances. The nature of the employment requires, and the character of the business demands, compliance. Such orders and rules are promulgated and are to be enforced for the protection of the public, of fellow servants, and of the employer's property, and cannot be disregarded or annulled by an employee with impunity. The latter cannot disobey orders upon the ground that, in his opinion, there is no reason for their further observance.

[1] Reported in 88 N. W. 974.

## Voluntary Change of Employment by Servant.

When one employed to do a designated kind of work, or to work at a particular place, voluntarily goes to a place different from that assigned by the contract of employment, he cannot successfully insist that he is within the protection of the rule that the master must exercise ordinary care to protect him against injury.

## Logging Train—Proximate Cause of Death.

*Held*, in this case, that the proximate cause of the death of plaintiff's intestate, a rear brakeman on a logging train, was his violation of a reasonable order given to him by the conductor in charge, and that, under these circumstances, the law forbids a recovery of damages.

Action in the district court for Crow Wing county by plaintiff, as administratrix of the estate of Louis M. Brown, deceased, to recover $5,000 for the death of decedent. The case was tried before McClenahan, J., who, upon the close of the testimony, directed a verdict for defendant. From an order denying a motion for a new trial, plaintiff appealed. Affirmed.

*F. D. Larrabee*, for appellant.

*Koon, Whelan & Bennett*, for respondent.

COLLINS, J.

Plaintiff's intestate, her son Louis M. Brown, was killed while employed as a brakeman upon one of the defendant's logging trains in the northern part of the state. She brought this action to recover damages, and at the close of the testimony the court below dismissed her case upon defendant's motion. This appeal is from an order denying her motion for a new trial, based upon a settled case and all files and records.

The facts were that Brown was rear brakeman upon a section of three cars which were being moved out along a spur to defendant's main-line track, which ran north and south. The spur track, less than a mile long, approached from the east, running in a northerly direction, with a sharp curve at the intersection. Brown was an experienced man on logging trains, and had been at work some two weeks upon this same spur track. The grade thereon was very heavy towards the main line, and the engine engaged in the work made a practice of hauling but three loaded cars at a time. These cars would be hauled on to the main track, the switch would

then be turned, and the cars pushed south, where they would remain on the main line until a train was completely made up, and it would then be pushed—the engine being in the rear—southerly to its destination. The cars used for this work were flats and "dinkeys." On the flats two lengths of logs could usually be piled, and on the dinkeys, built expressly for logging purposes, but one length could be loaded. All of the cars were equipped with hand brakes, and part with air brakes. All of the time, work was done at night; the cars being loaded at the end of the spur during the daytime by the log owners.

On the night in question, nine cars had been moved out in three sections, and the engine returned to the end of the. spur for the purpose .of hauling out the last section,—one flat car and two dinkeys,—each loaded with logs, and equipped with both air and hand brakes. These cars had been loaded in the usual manner, by first putting on two or more tiers of logs, and then binding with chains, then putting on one or more tiers, and again binding with chains, and finally placing one or more binding logs on top, which were not chained or otherwise fastened, but were supposed to press down upon the chains below so as to bind the entire load. There is no dispute but that the logs were loaded in the customary manner, although it is claimed that on one of the dinkeys they were improperly chained. This car was in the middle of the three, the flat being in the rear. When the section was ready to be moved from the loading place, the conductor, Coulter, boarded the cab of the locomotive; Logan, the head brakeman, and Brown, took positions upon the rear footboard of the engine, on the east side of the drawbar; thus placing themselves between the first car and the tender; and the train started, running about three or four miles per hour. When it came to the main track, and the tender of the engine had reached a point thereon about thirty feet north of the switch stand, which was on the west side of the main track, Brown stepped off to the east. He was killed almost immediately by the falling of the only binding log upon the middle car, and it was shown that the chains upon that car were so loose that two other logs had partly dropped out of place and were hanging down.

Why he stepped down from the footboard is a matter of surmise.

He was ·on the wrong side of the section to turn the switch whereby the cars could be moved out upon the main line, and while he had authority to throw this switch, if convenient, it was Logan's duty, as head brakeman, to attend to it on this occasion, not Brown's duty. This stands admitted. He might have gotten off so as to give Logan an opportunity to step from the footboard, or it might have been his intention to walk to the southerly end along the main track until he reached the nine cars already standing somewhere below the clearing point between the spur and the main track, then to signal the engineer as the section approached the standing cars, and then to make the necessary coupling, as was his duty, unquestionably, as rear brakeman. But the record is silent as to how far distant the nine cars stood. They may have been just south of the clearing point, about one hundred twenty-five feet from where Brown stepped off the footboard, or they may have been much further away. This, like Brown's purpose in stepping off, is mere surmise. It does not appear that he had any duty to perform at that place.

About two weeks prior to the accident a section of cars, while being hauled out on this spur, had broken in two; and, because there was no brakeman in the rear to apply the hand brakes, a part of the cars ran back down the grade and collided with and damaged others at the loading place. Thereupon the conductor, Coulter, ordered Brown, as rear brakeman, always to ride on the rear of the section, giving two reasons for such order: One, that he might be in position to set the hand brakes and prevent the running back to the end of the spur in case the train should break in two; the other, that he might be able to see logs which might drop off the cars—a common occurrence—fall upon the track, and possibly ditch the engine or the empties when returning. This order was given while at work on this spur, and applied to the main line, also, according to the testimony of the conductor. So far as was known, Brown invariably obeyed the order from the time it was given, and it was shown that in taking out the first three sections on the night of the accident he had gone to and had remained upon the rear car while it was in motion. It stands

85 M.—21

conceded that he disobeyed in riding out with the last section, and that the conductor did not know of the disobedience; and it is obvious that he would not have been struck by the falling log if he had taken his proper position, and had remained on the rear of the last car, instead of riding on the footboard. His object in going there did not appear, but that is immaterial, as we regard the testimony.

We assume, for the purposes of this appeal, that the negligence of the defendant company was sufficiently established; and this brings us to inquire whether Brown's disobedience of orders and apparent breach of duty will prevent a recovery in this action. Was Brown violating the order of his superior unjustifiably, and was this violation the proximate cause of his death?

The right of the employer to promulgate rules, and the duty of the employee to obey them, are reciprocal. If the right exists in the master, and is exercised by him, public policy requires compliance therewith by the servant. It seems to be well settled by the authorities—and there is no discord—that it is the duty of the employees of a railroad company implicitly to obey all reasonable orders or rules, and a failure so to do will defeat a recovery by an injured employee, if his disobedience was the proximate cause of his injury, unless obedience was impracticable under the circumstances. 3 Elliott, R. § 1280, et seq.; 7 Am. & Eng. Enc. (2d Ed.) 425. See also Merritt v. Great Northern Ry. Co., 81 Minn. 496, 84 N. W. 321.

It is very generally held that disobedience of the orders and rules of the employer constitutes contributory negligence, when injury results to an employee. There may be circumstances which will excuse disregard of orders or rules, but prima facie disobedience is always negligence, and it is only in clear cases that it can be excused. Obedience to all reasonable rules brought to the attention of the employee is part of his contract of employment. Such orders and rules are promulgated and are to be enforced for the protection of the public, of fellow servants, and of the employer's property, and cannot be disregarded or annulled by employees with impunity. Gordy v. New York, 75 Md. 297, 23 Atl. 607; Conners v. Burlington, 74 Iowa, 383, 37 N. W. 966; Railway

Co. v. Wilson, 88 Tenn. 316, 12 S. W. 720; Memphis v. Thomas, 51 Miss. 637; Eastburn v. Norfolk, 34 W. Va. 681, 12 S. E. 819; Louisville v. Mothershed, 110 Ala. 143, 20 South. 67. The rules of law applicable to the subject, with apt references to the adjudications, are well stated in 2 Bailey, Pers. Inj. § 3392, et seq.; also in note to Ford v. Chicago (91 Iowa, 179), 24. L. R. A. 657. See also 3 Elliott, R. § 1313, et seq.

In order to make a party liable in the capacity of an employer for injuries resulting from negligence, the plaintiff must affirmatively prove that at the time of the injury he was acting within the line of his duty as an employee. If the time when, and the place where, the injury is received, are not within the scope of the contract of employment, the relation of master and servant cannot justly be said to exist, and no recovery can be had against a defendant in the character and capacity of a master or employer. When one employed to do a designated kind of work, or to work at a particular place, voluntarily goes to a place different from that assigned by the contract of employment, he cannot successfully insist that he is within the protection of the rule that the master must exercise ordinary care to protect him against injury. 3 Elliott, R. § 1303, and citations.

There is, of course, in cases of this character, the presumption that the servant is acting within the line of his duty; but this presumption may be rebutted, and we are of the opinion that it was completely met and overthrown in this case. Brown was not at a place where he could perform the duty assigned to him by the conductor when he rode on the footboard, or when he was struck by the falling log. His station was then upon the rear end of the flat car, there to attend to the brakes, watch for falling logs, and to perform the general duties of a rear brakeman; and this was particularly true when the section reached the main line, and the car he should have been on was brought in front of the section as it was backed southerly towards the balance of the train.

To obviate the application of well-established rules, it is argued with much force and ability by counsel for plaintiff that there was no reason for Brown's observance of the order or rule on this

particular occasion, and therefore he was justified in his disregard of it, and in taking position upon the footboard, because the three cars were fully equipped with air brakes operated from the engine, acting automatically, and firmly setting the brakes on the detached cars if the train broke in two. There was no necessity for Brown's remaining upon the rear car to handle brakes, and this excused his disregard of the order, urges counsel. And because the track was practically level with the surrounding country, it was also unnecessary for him to remain at the rear to observe logs which might fall off the cars. In other words, there could arise no necessity to use the air brakes, and it was impossible for logs falling from the cars to drop upon the track, because of the level character of the ground.

This assumes, in the first place, that the air brakes would always work. If they did, it is conceded that they would be more effective than hand brakes in case the train should separate. But it is a well-known fact that the air does not always work, and for this reason cars are equipped with hand brakes, as were those in question, and brakemen were employed to attend to them. And it assumes that logs, when falling from the train, could not drop upon the rails. where the adjacent ground is practically level. Whether they dropped upon the rails, or in dangerous proximity thereto, would largely depend upon the cause and manner of falling, and the position in which they struck the ground. Just where they would strike and remain is all a matter of conjecture. And it assumes in the second place, that Brown had a right to ignore and annul the order of the conductor that he should ride upon the rear of the section, as rear brakeman. It was not for Brown to disobey the order upon the ground that, in his opinion, there was no reason for its further observance.

If this were the law, a reasonable and necessary order, as this was, designed to protect the public, fellow servants, the employee himself, and the company's property, could be set aside at will. One order or rule would govern to-day, and another to-morrow. As to those persons in the service of a railway company, there must be a strict compliance with all reasonable regulations. 2 Bailey, Pers. Inj. §§ 3332–3398a, and cases cited. The contract of the employ-

ment requires, and the character of the business demands, such compliance. No cases in opposition to the rules of law herein stated have been cited by plaintiff's counsel, and we believe there are none.

Counsel also contended that it cannot be said that Brown's violation of the order was the proximate cause of his death, because—First, the order was not in force from the time the section reached the main line; and, second, from the testimony it appeared that a brakeman had a right to "get off anywhere."

The premises relied on are unfounded, as we read the evidence. Taken as a whole, it was conclusive that Brown's place was at the rear on both spur and main tracks while the cars were in motion, and the necessity therefor was greater when on the main line than when on the spur. And while the conductor did testify that a brakeman had a right to "get off anywhere," it is beyond question that this was not to be understood as permitting a brakeman to get off as he pleased, or when duty or necessity did not require it, or when orders required him to remain on the cars. If Brown had been killed after he had stepped off the rear of the car, counsel's argument might be in point and potent. Brown was in fault when he disobeyed the order, and was not in the discharge of his duty when killed.

The proximate cause of his death was the violation of the order. By his disobedience in riding upon the footboard, stepping therefrom, and standing beside the moving cars, from which, by observation and experience, he knew logs frequently fell while in transit, he assumed an unnecessary risk, not in the line of his duty, and was guilty of contributory negligence. Under such circumstances, the law forbids a recovery.

We have carefully examined the rulings of the trial court when receiving testimony of which counsel complains, but find no error. None need special consideration.

Order affirmed.