ULRIK NORDQUIST v. GREAT NORTHERN RAILWAY COMPANY.[1]

June 5, 1903.

Nos. 13,514—(84).

### Disobedience of Employer's Rules.

An employee is bound to obey all of the reasonable rules of his employer with reference to the conduct of his business. Disobedience of such rules, if it contributes directly to the injury of the employee, conclusively charges him with negligence, which will bar any recovery of damages for his injury.

### Contributory Negligence.

The plaintiff in this, a personal injury action, is chargeable as a matter of law with contributory negligence in failing to comply with the rules of the defendant as to taking of freight trains through one of its tunnels.

Action in the district court for Hennepin county to recover $20,000 for personal injuries. The case was tried before McGee, J.,

[1] Reported in 95 N. W. 322.

who directed a verdict in favor of defendant. From an order deny-
ing a motion for a new trial, plaintiff appealed. Affirmed.

*John Lind* and *A. Ueland*, for appellant.

*W. E. Dodge* and *Charles S. Albert*, for respondent.

START, C. J.

On September 11, 1901, the plaintiff, who was then an employee
of the defendant as a conductor on its freight trains, was taking
a freight train through a tunnel in the main range of the Cascade
Mountains in the state of Washington. The train became unman-
ageable by reason of the failure of the air brakes to work properly,
and ran at a dangerous rate of speed through the tunnel to a point
below, where it left the rails at a curve in the roadbed, and was
thrown down the mountain side, and demolished. The result of
the accident was that several persons, including the engineer and
fireman of the train, were killed, and the plaintiff's skull was
fractured in two places, and his right arm crushed so that it had
to be amputated. He brought this action to recover damages for
such injuries on the ground that they were caused by the alleged
negligence of the defendant in failing to light the tunnel and in
omitting to construct and operate a safety switch at or near Wel-
lington between the western portal of the tunnel and the curve
in the roadbed where the train left the rails. The answer denied
any negligence on the part of the defendant, and alleged that the
plaintiff's injuries were due solely to his own negligence.

The defendant, on the trial of the action, and at the close of the
evidence, requested the court to direct a verdict for the defendant,
for the reason that the evidence did not show any negligence on
the part of the defendant, but did conclusively show that the plain-
tiff was guilty of negligence contributing to his injury, and that
he assumed the risk. The court expressed the opinion that the
plaintiff was guilty of contributory negligence, but granted the
request, and directed the jury to return a verdict for the defendant
on the ground that the evidence was not sufficient to justify a
finding of negligence on its part. The plaintiff appealed from an
order denying his motion for a new trial.

The evidence as to the construction of the tunnel, the grade of

the roadbed and its curves, is undisputed. The tunnel is two and sixty-two one-hundredths miles in length, sixteen feet wide, with perpendicular sides twelve feet high from the top of the rails, and 'arched to a radius of eight feet, so that from the top of the rails to the apex of the crown it is twenty feet. The roadbed through the tunnel from east to west and for some twenty miles below is on a sharp downgrade approximating as an operating grade two and two-tenths per cent., the maximum grade elsewhere on the defendant's railway line. There are numerous and frequent curves in the roadbed for twenty miles next below the tunnel. The station at the east entrance of the tunnel is known as "Cascade Tunnel," and the one at the west entrance, which is about one-eighth of a mile below, is "Wellington." A mile and one-half below this station is the curve where the train left the rails. There are, including this curve, seven curves in the roadbed between the western entrance of the tunnel and the place of the accident. It is apparent that the tunnel in connection with the roadbed for twenty miles below was a place of great and peculiar danger through and down which to operate heavy freight trains. This was recognized by defendant, and, in addition to its general rules making conductors responsible for the conduct of the trainmen, and requiring them to know that cars in trains have been inspected, and that the brakes and signals are in proper order, adopted and promulgated a special rule as to the movement of freight trains at Cascade Tunnel, which was this:

"No train will leave Cascade Tunnel until the air brakes have been carefully tested. The engineer will test the brakes, and leave them set until trainmen examine each car; then release them, and trainmen will again examine each car, and see that the brakes release, before giving the signal to start the train. Conductors must inform engineers how many cars, loaded and empty, in the train, and how many cars of air are working. All retainers must be used from Cascade Tunnel to Merrit, and from Chiwagin to Leavenworth, and from Cascade Tunnel to Skykomish."

This rule, as well as the general rules, was well known to and understood by the plaintiff before the accident. The train in question was westward bound, and consisted of thirty-three loaded freight cars, and was hauled by three engines, one at each end and

one in the middle. It was equipped with hand and air brakes, the latter alone being adequate, if the air worked properly, to control the movement of the train through the tunnel and down the grade. When the train reached Cascade Tunnel station, the rear engine was detached, the middle one set out, the train coupled, and it entered the tunnel. When it reached a point about a quarter of a mile from the eastern entrance, and had attained a speed of some twenty miles an hour, the engineer attempted to set the air brakes, but they failed to work. The plaintiff, who was in the engineer's cab, started at once to set the hand brakes, but in the darkness made slow progress. The first one he reached had been set, evidently by the fireman. He reached the second one, which he set, but before he could set another the train was thrown from the track.

We are of the opinion that the evidence was insufficient to sustain a verdict based upon the alleged negligence of the defendant in failing to light the tunnel. But the question whether the evidence was sufficient to take the case to the jury on the issue as to the defendant's alleged negligence in omitting to construct and operate a safety switch at or near Wellington station is a doubtful and complicated one, involving, as it does, questions of civil engineering. We find it unnecessary to decide this question, for we are of the opinion that it conclusively appears from the evidence that the plaintiff was guilty of contributory negligence in not complying with the special rule as to the conduct of conductors at Cascade Tunnel.

An employee is bound to obey all of the reasonable rules of his employer with reference to the conduct of his business. Disobedience of such rules, if it contributes directly to the injury of the employee, conclusively charges him with negligence, which will bar any recovery of damages for his injury. Green v. Brainerd & N. M. Ry. Co., 85 Minn. 318, 88 N. W. 974. This rule is based upon the plainest principles of justice and sound public policy, for upon a prompt compliance with such rules, especially in the railway service, depends the safety of not only property, but of human life and limb. We have attentively examined all of the evidence relating to the question whether the plaintiff complied with the rules

of the defendant as to the moving of trains at Cascade Tunnel, and have reached the conclusion that he failed to comply with them in several material respects, and that his failure to do so contributed directly to his injury. The evidence is practically conclusive that the air brakes were sufficient in number, if in proper condition, to have controlled the movements of the train through the tunnel, and prevented the accident; that, if they had been in proper condition when the train entered the tunnel, it is not to be presumed upon any reasonable hypothesis that their condition changed in the two or three minutes, at most, which it took the train to go one-fourth of a mile into the tunnel; hence the defect must have existed before the train started into the tunnel, and would have been discovered if the rules had been complied with. And, further, that while the plaintiff knew, after the train had been coupled, that the air was working on the eighteen cars which were ahead of the middle engine before it was set out, yet he had no personal knowledge that it was working on the fifteen cars back of the engine; that as to those he simply saw his brakeman "working back there examining the air"; that the brakeman applied no tests to determine whether the air was working or not, and gave as a reason why he did not inspect the air in accordance with the rules that "we were in a hurry to get out of there"; and that the plaintiff did not inform the engineer how many cars the air was working on, as the rule imperatively required, for he had not informed himself in the premises. The conclusion is not to be resisted that the plaintiff failed to comply with the rules, and that his negligence in this respect contributed to his injury.

Order affirmed.