MICHAEL E. SCOTT v. EASTERN RAILWAY COMPANY OF MINNESOTA.[1]

July 3, 1903.

Nos. 13,467—(161).

**Inspection of Railway Cars.**

All rules which impose the duty of car inspection upon conductors and brakemen must be reasonable, and must be reasonably construed. Whether they are reasonable is not for a jury, ordinarily, but is to be determined by the court as a question of law.

**Same—Steps.**

A rule which obliges brakemen to examine and know for themselves that steps of the cars in their trains are in proper condition, and which requires conductors to see that brakemen perform the duty of necessary in-

[1] Reported in 95 N. W. 892.

spection of such steps—ample time being given to inspect and to see that there is such inspection—is a reasonable rule, as a matter of law.

**Violation of Company's Rules.**

If an employee of a railway company, of ordinary intelligence, is injured by reason of his disregard or disobedience of a reasonable rule issued by the company, of which he has been properly notified, ample time and opportunity being given to observe and obey, he cannot recover, as against the company, for an injury received, when his violation of the rule is the proximate cause thereof. He will, as a matter of law, be deemed guilty of contributory negligence.

**Public Policy.**

A rule of the character above considered is not contrary to public policy, nor can it be held to be obnoxious to the principle of law which requires the master, in the exercise of reasonable care, to furnish and maintain safe and proper appliances and instrumentalities for the use of his servants in the work assigned to them.

**Proximate Cause.**

*Held,* in the case at bar, that plaintiff, a freight conductor, cannot recover in this action for injuries received while in defendant's employ; his violation and disregard of a reasonable rule being the proximate cause of the injury.

Action in the district court for Ramsey county to recover $30,000 for personal injuries. The case was tried before O. B. Lewis, J., who directed a verdict in favor of defendant upon the conclusion of plaintiff's evidence. From an order denying a motion for a new trial, plaintiff appealed. Affirmed.

*Samuel A. Anderson* and *P. D. Godfrey,* for appellant.

*W. E. Dodge, J. A. Murphy,* and *Heber McHugh,* for respondent.

COLLINS, J.

Plaintiff, at the time he received his injuries—May 22, 1902—was in the employ of defendant company as a freight conductor. He had held this position for about one year, and for about three years prior thereto had worked for defendant as a brakeman. At the time of the accident he had charge of a work train at Hughson station, some twenty-five miles west of the West Superior terminal. With his crew he made his headquarters at the terminal; running out to Hughson with the locomotive and a caboose car in the morning, and returning to the yard at night. On May 20 he discovered that the steps upon the car then in use were in bad order, and notified his superior officer.

When reporting for duty on the morning of the twenty-first, he was notified by the yardmaster to take another specified car, which he did; having the right to assume that it had been inspected while at the terminal. The locomotive and car then proceeded to Hughson, where the latter was sidetracked, and at the end of the day plaintiff and his crew returned with it to Superior. The next morning they again went to Hughson, and, on reaching there, plaintiff left the car, and proceeded to the depot for orders. Meantime the locomotive, with the car attached, went westerly a short distance, for the work train. As it returned, plaintiff signaled the engineer, the train slowed down, and then, in attempting to board the car while it was running about five or six miles an hour, he lost his footing, and was thrown under the wheels.

The immediate cause of the accident is admitted to have been a step in bad order, and there was an abundance of testimony to justify a finding that the defect existed when plaintiff was directed to take the car, on the morning of the twenty-first. Its bad condition had been overlooked by the general inspector. Because of this failure to inspect, defendant's negligence must be conceded. But it was claimed that, according to his own admissions, plaintiff was guilty of gross contributory negligence which would prevent a recovery by him in this action. At the conclusion of the trial in the court below, a verdict was ordered and returned for defendant, evidently upon this ground. The appeal is from an order denying plaintiff's motion for a new trial.

The negligence attributed to plaintiff, and relied upon, is an admitted disregard of rules well known to him, and promulgated by defendant company for the government of its employees. As a conductor, plaintiff had full charge and absolute control of his train, and under the rules the brakemen were subject to his direction and orders. On the morning the car was assigned to him, and again on the morning he was injured, he reported for duty after daylight, and, in accordance with the rules, thirty minutes before train time, presumably that he might make proper preparations. He personally tried the brakes upon the car on both mornings before starting, and found them to be in good order, according to his testimony. He was familiar with all of the rules, including a special rule or notice furnished to and read by him, and returned with his written acknowledgment, in January, 1901. He admitted at the trial that he knew and fully understood every one of

them.   He made no inspection of the car on either morning, except as we have stated; and he did not ascertain in any manner whether the two brakemen under his immediate control had examined the steps upon the car, or had performed any other act of inspection.   It was daylight when he was injured, and he testified that he did not look to see where he was stepping when he attempted to jump on the car, because he was watching his hands.   The only reason assigned by him at the trial for failing to obey the rules, which required him to make an examination of his car, and also to ascertain whether his brakemen had inspected it, was that he did not consider it necessary so to do.

By defendant's rule 152, conductors were made responsible for the safety, prompt movement, and proper care of their trains, and for the conduct of the men employed thereon.   By rule 153, they were required to be familiar with the duties of all employees upon the trains, including brakemen, to enforce the rules applicable to them, and to report any insubordination, neglect of duty, or misconduct.   By rule 162, they were required to know that their cars had been inspected by train-men.   Any omission on the part of the inspectors was to be regarded as a danger to the train, to be reported at once to the superintendent. By rule 164, they were required to

> "Examine the brakes, couplings, safety chains, signal cords, etc., so as to know, as far as practicable, that everything is in order before starting,"

and were directed to require brakemen to aid in examining trains. By rule 202, the latter, while on trains, were under the direction of their conductor.   By rule 203, brakemen were required to

> "Examine and know for themselves that the brake shafts and attachments, ladders, running boards, steps, handholds, and other parts and mechanical appliances, which they are to use, are in proper condition, and if not, report them to the proper parties that they may be put in order before using."

On January 29, 1901, the special rule or notice before mentioned was printed and forwarded to every operative upon the road, reading as follows, in so far as is important here:

> "Every employee of this company is hereby warned that before exposing himself, or his fellow employees, to danger, it

will be his duty to examine the condition of all machinery, tools, cars, engines, trucks, tracks or appliances that he is required to use in the performance of his duties, satisfying himself so far as he reasonably can, that they are in safe working order. * * * It is the right and duty of every employee to take sufficient time to make such examinations, and to refuse to obey any order which exposes himself or his employees to danger. N. B. This notice is additional to the book of rules, bulletins and other instructions, and does not rescind, cancel or modify the same."

Attention is now called to a few of the salient features of this case: (a) That when the accident happened the plaintiff had worked upon defendant's trains three years as a brakeman, and one year as a conductor, under the rules. (b) That in compliance with a rule he had reported for work on the morning of the twenty-first, when he first received this car, and again on the morning of the twenty-second, a half hour before train time, presumably that he might have ample time in which to prepare for his trips; that he had but twenty-five miles to run to Hughson; and that no haste was required of him in the performance of any of his duties. (c) That the special rule or notice expressly provided that it was his right and duty to take sufficient time to make all necessary examinations and inspections of each car in his train. (d) That he had but one car to inspect until he reached Hughson, and at this point a very small work train was placed in his charge. (e) That all work was done and that the accident happened in broad daylight, after plaintiff had used the car more than twenty-four hours. (f) That the defect in question was easily seen—a casual glance would have discovered it—and that car steps are designed for the use of persons whose business it is to get on and off the train, and that the good order of each step is of the greatest importance, not only to employees, but to the traveling public.

The position of defendant's counsel is that plaintiff, as a conductor, was under obligation to discover for himself the bad condition of the step, or to see that his brakeman made an inspection which would have disclosed the defect, and that his failure to comply with the rules well known to him wholly relieved their client from liability on account of plaintiff's injuries. They concede the rule of law which requires

the master to exercise reasonable care to furnish and maintain safe
and proper appliances and instrumentalities to his servants for use in
the work assigned to them, and also that a master cannot by any agree-
ment compel a servant to assume all risks of employment, or to release
him from liability in case the servant is injured by dangerous defects
in appliances and instrumentalities, which could have been discovered
by proper examination or inspection.

But counsel for plaintiff rely wholly upon this principle; taking the
ground that a master cannot impose any rule upon his servant which
will directly or indirectly militate against the liability arising out of
their relation, or which will contravene or encroach upon the doctrine
that a servant may assume, and may safely act upon the assumption, that
a proper examination and inspection has been made by or in behalf
of the master. They contend that there has been a well-settled distinc-
tion made in the cases, and a classification of rules relating to the sub-
ject, which supports their claim that the rules relied upon in this case
were designed to relieve the defendant company from its common-law
liability, and for that reason such rules are prohibited and forbidden
to the same extent as would be a direct contract with the servant. A
careful examination of the cases cited in support of this claim fails to
convince us that there has been any such classification or distinction
in respect to rules, or that, upon principle, any should be made.

It is settled by the adjudicated cases that it is the right and duty of
a master engaged in a hazardous business, such as railroading, to pro-
mulgate rules for its orderly and safe management, and thus to not
only protect the traveling public, but to reduce the risks assumed or
encountered by all employees. All rules which impose duties (such
as car inspection) upon servants must be reasonable, and must be rea-
sonably construed. Whether they are reasonable is not for a jury,
ordinarily, but is to be determined by the court as a question of law.
Bailey, Pers. Inj. § 3325. Some of the authorities go so far as to hold
that servants cannot be permitted to dispute the reasonableness of rules
and regulations prescribed for their conduct by the master, but must
implicitly obey. It is further and almost universally held that dis-
obedience by a servant of reasonable rules and regulations, of which
he has notice, will defeat recovery in case he is injured because of such
disobedience. In this state we have recognized this doctrine to its full

extent in Green v. Brainerd & N. M. Ry. Co., 85 Minn. 318, 88 N. W. 974, and very recently in Nordquist v. Great Northern Ry. Co., 89 Minn. 485.

At the time of this accident it was the duty of the conductor, under defendant's rules, to examine the car, or to cause it to be examined by his brakemen, and to reject it if, in his judgment, it was unsafe; and it was his right and duty, under the special rule of 1901, to take ample time to see that examination and inspection were made. While the company required other inspection, by men especially employed for that purpose at the terminals, it imposed the additional duty upon trainmen, thus to further secure safety and immunity from injury not only to men upon whom this duty devolved by reason of the rules, but for the benefit of other employees and the traveling public. The effect of such rules as these was to notify conductors and brakemen that, to some degree, they must be on their guard against injury from the occasional negligence of other servants specially charged with the performance of the duty of inspection in the master's behalf. One of these rules called special attention to car steps; to the fact that they might be out of repair, that the work of examination might not be faithfully performed by regular inspectors, and that, by its terms, further and other inspection was required of servants who had occasion to use the same while at work.

We cannot conceive of a more reasonable rule than one which requires every trainman to see that car steps which are hastily and constantly used by him, and by every traveler, in going in or out of the cars, are in good order, or of a more salutary and needed rule than one which compels all conductors to see that this work of inspection is performed by their subordinates. It is because such a rule is reasonable and just that it has been held, almost without exception, that a failure to examine and inspect steps and other parts and adjuncts of the cars will prevent recovery in case a servant is injured by reason of his own neglect to obey and observe; the servant, of course, having been properly notified of the rule.

So the universally established doctrine is that if an employee, of ordinary intelligence, is injured by reason of his disobedience or disregard of reasonable rules and orders issued by the master, and brought to his attention in ample time, and opportunity being given in which to

obey, he cannot recover, as against the master, for an injury received, when a violation of a rule is the proximate cause of his injury. He will, as a matter of law, be deemed guilty of contributory negligence. Nor do the cases relied upon by counsel for the plaintiff support a contrary view. In fact, the doctrine above stated is affirmed in several of the cited cases, where similar rules were under consideration. For instance, Louisville v. Orr, 91 Ala. 548, 8 South. 360—a case arising out of the failure of a freight brakeman to fasten properly an end gate of a gondola car. He had disregarded and disobeyed a rule of inspection. The gate was unfastened, and fell down as he attempted to step upon it when boarding the train, causing his death. It was stated in the opinion that it was the duty of the master to furnish and maintain suitable material and appliances for the prosecution of its business, and, in the absence of notice to the contrary, a servant had the right to presume that his employer had complied with his duty in this respect, unless the character of the employment was such as to devolve upon the servant the duty of examination of the material and appliances. But, said the court, "If such was the duty of the employee, and he negligently assumed that they were in proper condition when they were not, and the injury arose from his own failure in this respect, he would be guilty of contributory negligence."

Another case cited is Memphis v. Graham, 94 Ala. 545, 10 South. 283—a coupling case; a freight conductor being killed on account of a broken drawhead. This is a much stronger expression against the contention of plaintiff's counsel, for it was expressly held, when speaking of a rule similar to defendant's No. 164, that, "so far as rule 140 imposes the duty upon employees to examine for their own safety the condition of the car, engines, and machinery, etc., before using them or exposing themselves on or with the same, so as to ascertain, as far as reasonably can be done, their condition and soundness, it is reasonable and proper." And also: "It cannot be expected of car conductors or brakemen to make the same careful examination, and to be able to discover defects to the same extent, as that expected and required of * * * the master, or person intrusted generally with this duty for the public safety or safety to employees; but the character of the general duties to be performed by conductors and brakemen is such that they necessarily become more or less familiar with the appliances

and machinery constantly in their use and under their supervision, and know, to some extent, when they are not in proper condition for safe use. To the extent of their information, and the opportunities afforded to make such examination, consistently with their other duties and the circumstances attending, they should observe and obey the rule." The gist of the decision was that, if disregard of a reasonable regulation requiring inspection by a conductor resulted in injury to him because of his disobedience, no recovery of damages could be had.

In another case (Chicago v. Fry, 131 Ind. 319, 28 N. E. 989) a question of the sufficiency of the reply was involved. It appeared from this pleading that the servant, a brakeman, had neither the appliances nor the opportunity to make the inspection required by the rules, and the court held that for these reasons he was relieved of the duty of obedience. The citation is inapplicable.

Another case cited by counsel is O'Malley v. New York, 67 Hun, 130, 22 N. Y. Supp. 48, affirmed in 142 N. Y. 665, 37 N. E. 570. The opinion therein expressly recognizes the doctrine that if ample time and opportunity are offered for the examination and inspection of cars, required by the rules, they must be made, and the consequences of a failure so to do must rest upon the servant who is negligent, in case he is injured. We might cite a large number of authorities in support of the proposition that the test is as to the reasonableness of the rules prescribed by the master, and that if they are reasonable the obligation created thereby is assumed by the servant, but particular attention is called to Karrer v. Detroit, 76 Mich. 400, 43 N. W. 370; Illinois v. Jewell, 46 Ill. 99; Chicago v. Jackson, 55 Ill. 492; Chicago v. Bragonier, 119 Ill. 51, 7 N. E. 688; Beall v. Pittsburgh, 38 W. Va. 525, 18 S. E. 729; Cameron v. Great Northern, 8 N. D. 618, 80 N. W. 885; Pennsylvania v. Whitcomb, 111 Ind. 212, 12 N. E. 380; La Croy v. New York, 132 N. Y. 570, 30 N. E. 391. Many of these cases, and others, are collected in a note to the text in 20 Am. & Eng. Enc. (2d Ed.) 105. See also note to Nolan v. New York (70 Conn. 159), 43 L. R. A. 305.

When it is determined, as a question of law, that rules 152, 162, 164, 202, 203, in so far as they apply to the facts now appearing, were and are reasonable, and that nothing improper or unreasonable was demanded of plaintiff when he was required either himself to inspect

the steps of the car, or to see that it was done—being commanded by the special rule to take sufficient time to make such inspection—this appeal is disposed of.  Such a requirement is not contrary to public policy, but, upon the contrary, is in aid of it.  It establishes a system of investigation and inspection devised and well calculated to serve as a check and a supervision upon and over regular inspectors, thus further to protect train servants, and to add greatly to the safety of travelers.  The inspection of the steps required by these rules demanded no particular skill, no examination of an expert character, and no appliances.  A glance in the direction of the steps, at one corner of the car, would have brought them into notice and have disclosed their unsafe condition.  It is difficult to understand how plaintiff, a conductor in charge of the train, could have used the car, have gone in and out as occasion demanded, and have passed the step while at work, as he did, without seeing that it had in some way been bent back underneath the car, and was in a dangerous condition.  Any person having the power of ordinary observation should have seen the defect in question during the time plaintiff had charge of the car.  His disobedience in respect to a reasonable rule precludes recovery for the injuries received.

Order affirmed.