SOLOMON D. FRY v. GREAT NORTHERN RAILWAY COMPANY.[1]

June 2, 1905.

Nos. 14,285—(38).

**Negligence:**

> The duty of a railroad company to exercise ordinary care in the inspection and keeping in repair of an engine for use by a fireman extends to a step between his seat and the deck of the cab, used to get up to and down from the fireman's seat. *Held*: (1) That the facts here justified the jury in finding the defendant guilty of negligence in respect to such duty. (2) That the fireman did not, as a matter of law, assume the risk involved, so as to prevent recovery for damage suffered.

**Excessive Damages:**

> *Held*, also, that a verdict greater than $3,500 for injuries proven in this case is excessive.

Action in the district court for Ramsey county to recover $16,300 for personal injuries. The case was tried before Olin B. Lewis, J., and a jury which rendered a verdict in favor of plaintiff for $5,000. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed on condition that plaintiff consent to a reduction of the verdict to $3,500.

*M. L. Countryman,* for appellant.

*Dodge, McElwee & Dodge,* for respondent.

JAGGARD, J.

The plaintiff and respondent, a locomotive fireman of seven years' experience, on the morning of November 14, 1903, before daylight, got onto the cab of an engine. He had never fired this particular

---

[1] Reported in 103 N. W. 733.

engine before, but was familiar with engines of its class. The outgoing trip was made with safety; but while returning at about three o'clock p. m. of the same day, while the engine was in motion, he fell or slipped while getting down from his seat on the left-hand side of the cab, and struck his right side against an iron step which he had used in descending. Thereby he suffered the injuries complained of. He had used the step a number of times when the engine was standing still. The light upon it was obscured. The plaintiff only introduced testimony as to circumstances of the injury; both parties produced expert testimony as to their extent. The jury returned a verdict for $5,000. Defendant appealed from an order denying the alternative motion for judgment notwithstanding the verdict or for a new trial.

1. The first question involved in the determination of this case is whether or not the defendant was guilty of actionable negligence. The step in question was fastened by two bolts to the inside of the cab, about two or two and a half feet above the floor or deck of the cab, and about the same distance down from the fireman's seat. Its function was to assist the fireman in getting up on and down from his seat. The normal condition of the step was at right angles to the side of the cab (known as the "wind sheet"). While there was some uncertainty as to the cause of the slanting, the testimony showed conclusively that it bent down from an inch to two inches from a right angle. The step in question was offered in evidence in the trial court, and was produced before this court. Its surface, on which the foot of the fireman would rest, was worn smooth, and its edge rounded by use. It is obvious that any considerable departure from right angles rendered the step dangerous. Defendant's counsel says that at an incline of two inches "only an acrobat could use the step with confidence." The roundhouse foreman, "whose duties are to watch the engines and see that everything was going right," inspected it, tested it, and fell from it both before and after plaintiff was injured. To improve its condition, he notched the surface with a cold chisel. Two other firemen, in October and November of the same year, slipped from the same step in substantially the same way.

The court charged the jury that it was the defendant's duty to exercise ordinary care to inspect and keep the step in repair, and that the failure on the part of defendant to perform its duty in either of these

particulars would constitute negligence. We are of the opinion that the duty of inspection resting on defendant extended to such an appliance as this step, and that this was a proper and relevant instruction. Construed as a whole, the charge of the court to the jury correctly set forth the rules of law applicable to the facts. The facts showed the defect conclusively, and were sufficient to justify the jury in finding that the defendant was guilty of negligence.

2. The second contention of the defendant was that the court should have directed a verdict for the defendant upon the ground that the defect complained of was conclusively shown to be obvious to any one of ordinary intelligence and was assumed by the plaintiff. The principles of assumption of risk are so familiar, and have been so clearly announced in so many decisions of this court, that it is sufficient to here advert only to the case of Ellington v. Great Northern Ry. Co., 92 Minn. 470, 100 N. W. 218, involving a similar state of facts. In that case Chief Justice Start says: "While it may be fairly inferred from the evidence that the deceased, in the discharge of his duty as fireman, must have passed along the running board before the accident, yet it does not follow that he must necessarily have discovered the defect and appreciated the danger of walking along the board in its defective condition. The duty of inspection did not rest upon him, and he might have repeatedly passed along the board and not discovered the defect unless he happened to step on the loose joint. Whether he assumed the risk was a question of fact."

Scott v. Eastern Railway of Minnesota, 90 Minn. 135, 95 N. W. 892, counsel for defendant regards as conclusive on this case. The distinction between that case and the Ellington case, drawn in the latter, controls the one at bar. In the Scott case the decision was based upon a rule of the company which made it the duty of the conductor, there seeking recovery, to inspect and know the condition of the steps to his caboose, because of defects in which he was injured.

3. Finally, the defendant contends that the verdict is grossly excessive, and is not justified by any evidence in the case. He insists that all the testimony showed was a broken rib or ribs, which healed without difficulty, and so that the plaintiff is in as good physical condition as he ever was. If this were all there was to the injury, the verdict would be obviously excessive. The testimony also showed, however, that

when the plaintiff fell he struck his hip against an iron, causing a contusion over the ilium or hip bone, but not fracturing it. There was testimony concerning an incarcerated nerve in the callous gathered about the point of fracture; but the testimony did not directly demonstrate the existence of such a condition. Plaintiff also complained of sleeplessness, and testified that his capacity to labor was decreased. The reflexes of his knee and of the ankle were somewhat exaggerated. He was "unable to straighten himself without a great deal of difficulty"; in fact "he was unable to straighten his body, and ordinarily stood in a stooping posture." The assistant to the general surgeon of the Great Northern Railway Company, who testified to the finding of the ordinary physical phenomenon accompanying the fracture of a rib, found some discoloration around the hip. He admitted that in the vicinity of the area or zone of this injury there were nerves connecting with the spinal cord; and that, while in his opinion none of these nerves were injured, he told the plaintiff and his wife that these nerves were injured, and that he, the plaintiff, had neuralgia of the spine. The impartial testimony of the chief surgeon, in particular, creates doubt as to whether or not the injury to the rib and hip is an adequate proximate cause for the condition of traumatic neurosis described. He did not, however, examine the plaintiff personally, and the hypothetical questions asked and answered do not satisfactorily determine the question. Taking the testimony as a whole, we are satisfied that it showed more injury than a simple fracture of a rib, and that the jury would have been justified in awarding a verdict of $3,500, but not in excess of that sum.

It is therefore ordered that a new trial be granted, unless respondent files a written stipulation in the court below, within twenty days after filing of the remittitur, consenting to the reduction of such verdict to the sum of $3,500. If this be done, judgment may be entered for such amount, with interest.