# ANNA MATHILDA BENSON v. LEHIGH VALLEY COAL COMPANY.[1]

January 2, 1914.

Nos. 18,298—(172).

**Master and servant—termination of relation.**

1. As between the parties the relation of master and servant does not necessarily terminate by the sale and transfer by the master to a third person of the property and business in connection with which the relation arose and exists.

**Transfer of business—knowledge of employees—presumption.**

2. Where there is no actual change in the management of the business, and it is continued in the same general way after the sale, by the same servants and employees, and the servants are in no way expressly or other-

[1] Reported in 144 N. W. 774.

Note.—On the question of the employer's duty to continue in business, see note in 6 L.R.A.(N.S.) 808.

wise informed of the transfer and the consequent change of proprietors, the relation is presumed to continue for a reasonable time, and the master remains liable to them to the same extent as though no sale or transfer had taken place.

**Burden of proof.**

3. The burden to show knowledge on the part of the servant is upon the master.

**Change of ownership—knowledge of decedent.**

4. Decedent was in the employ of defendant for several years; defendant transferred its business to a third person on March 1; the management of the business thereafter continued as before; he was fatally injured on March 13 by a defective instrumentality furnished by defendant; it is *held* that the question whether decedent knew of the change of ownership was one of fact for the jury.

**Inspection of machinery.**

5. The question whether decedent, the injured servant, was required by the duties of his employment to inspect the machinery and appliances with and about which he performed his duties, and to keep and maintain the same in repair was, on the evidence, one of fact for the jury.

**No reversible error.**

6. The record presents no reversible error.

Action in the district court for St. Louis county by the special administratrix of the estate of Henry Benson, deceased, to recover $10,000 for the death of her intestate while in the employ of defendant. The case was tried before Ensign, J., who denied defendant's motion for a directed verdict, and a jury which returned a verdict in favor of plaintiff for the amount demanded. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*H. S. Clapp* and *Luse, Powell & Luse,* for appellant.

*Samuel A. Anderson* and *Warner E. Whipple,* for respondent.

BROWN, C. J.

Plaintiff's intestate, employed as a servant upon and about certain coal docks owned by defendant at the city of Superior, in the state of Wisconsin, received a fatal injury from a defective instrumentality connected with said docks, and thereafter this action was

brought to recover the compensation provided for by the laws of Wisconsin for death by wrongful act. Plaintiff had a verdict and defendant appealed from an order denying its alternative motion for judgment or a new trial.

It is contended by defendant in support of the appeal, (1) that the relation of master and servant between decedent and defendant did not exist at the time decedent received the injury causing his death, and, therefore, that defendant is not liable; (2) that it was one of decedent's duties to inspect the instrumentalities, machinery and premises with and about which he was required to perform his work, and to repair defects therein or to inform his superior servants thereof, to the end that proper repairs might be made, and that the defective instrumentality causing the injury complained of should have been inspected by him which, had it been made, would have disclosed the defect, and that since he failed in his duty in this respect no recovery can be had; and (3) that there were errors in the instructions of the court to the jury for which a new trial should be granted.

1. The facts bearing upon the first contention, namely: That the relation of master and servant between defendant and decedent did not exist at the time of his injury, are as follows: The docks upon which decedent was at work were constructed and owned by defendant, and such ownership continued down to the time of decedent's death and, so far as the record discloses, still continues. They had been operated by defendant in the commercial handling of coal from the time of the construction thereof until March 1, 1912, at which date it is claimed they were leased to another corporation. Decedent met his death on March 13, or about two weeks after this change of proprietorship took place. Defendant was incorporated as the Lehigh Valley Coal Co. A short time prior to the first of March, 1912, there was formed in New Jersey a corporation named the Lehigh Valley Coal Sales Co., and it was to this corporation defendant claims to have leased the docks on March 1, relinquishing then and thereby all control over the operation of the same, though defendant remained the owner of the property. There is no controversy about the fact that these two corporations were independent

concerns, and it is not claimed that the "Sales" company was a representative of defendant, the "Coal" company. Sometime prior to the first of March the president of the "Sales" company issued a circular notice to the patrons of the "Coal" company in the following language:

"LEHIGH VALLEY COAL SALES CO.
"90 West Street,
"New York.
"February 16th, 1912.
"NOTICE.

"The Lehigh Valley Coal Sales Co. will purchase on March 1st, 1912, and thereafter, the Lehigh Valley Coal Company's output of anthracite coal at the mines, and will take over that company's business of selling, shipping and handling coal.

"The Lehigh Valley Coal Sales Co. assumes all the obligations of the Lehigh Valley Coal Co. with respect to agreements for the sale of coal; all payments for coal purchased should be made to the Lehigh Valley Coal Sales Co. on and after March 1st.

"Your continued patronage is respectfully solicited.
"John W. Skeele,
"President."

For many years prior to this transfer defendant had operated the docks through its agents and employees. Decedent was one of those employees, and for about four years prior to this transfer had continuously been in defendant's employ as an oiler of the dock machinery. Other employees included a superintendent and a foreman, who were decedent's superiors. 'A copy of the circular above set out was given to the superintendent, and he was thus expressly informed of the transfer to the sales company. The evidence, however, wholly fails to show that decedent was in any manner informed of the change of proprietorship. There is no evidence that he was expressly notified of the change, and the superintendent testified that he did not know whether decedent knew anything about it, though he thought that some of the employees had been informed thereof. The transfer

124 M.—15.

took place on March 1, and the death of decedent occurred on March 13 following. No change in the conduct of the business took place, the same employees continued in the same general work, and there was nothing to indicate to any of them, except the superintendent, that a change of proprietors had taken place. In this situation the authorities are clear that the original employer continues liable to the employees who have no notice of the change. In other words, as between the parties, the relation of master and servant is not necessarily terminated by a sale and transfer to a third person of the business in respect to which the relation arose. Labatt states the rule applicable to such a situation as follows:

"In an action by a servant for an injury caused by a defective instrumentality, the obviously reasonable and just doctrine is that, if he was allowed, without notice of a change of masters, to continue doing the same work as that for which he was first engaged, and on premises which ostensibly remained in the possession of his original employer up to the time of the accident, he should be entitled to hold that employer liable." Labatt, Master & Servant, § 31, subd. "c."

The authorities sustain this view of the law. Soloman R. Co. v. Jones, 30 Kan. 601, 2 Pac. 657; Missouri, K. & T. Ry. Co. v. Ferch (Tex. Civ. App.) 36 S. W. 487; Gulf, C. & S. F. Ry. Co. v. Shearer, 1 Tex. Civ. App. 343, 21 S. W. 133; Goldman v. Mason, (City Ct. Brook.) 2 N. Y. Supp. 337; State v. Trimble, 104 Md. 317, 64 Atl. 1026; Delaware, L. & W. Ry. Co. v. Hardy, 59 N. J. L. 35, 34 Atl. 986; Brennan v. Berlin Iron B. Co. 74 Conn. 383, 50 Atl. 1030. And it is in harmony with the further rule, of general application, that when the master disposes of his business to another, without notifying the servant of the change, which in no way comes to the notice of the latter, the master continues liable for the servant's wages. Perry v. Simpson, 37 Conn. 520; North Chicago R. M. Co. v. Hyland, 94 Ind. 448; Tousignant v. Shafer Iron Co. 96 Mich. 87, 55 N. W. 681. In the last case cited it was further held that the burden of showing that the servant had notice of the change of masters is upon the original employer. This is in harmony with the general doctrine that personal business relations once shown to exist will be presumed to continue for a reasonable time, in accord-

ance with the nature of such relationship. 2 Modern Evidence (Chamberlayne), § 1046; 22 Am. & Eng. Enc. (2d ed.) 1240. In this case the relation of master and servant was shown to exist down to March 1, and, since defendant gave no notice to decedent, the presumption referred to applies. The question was properly sub-mitted to the jury.

2. The docks were supplied with all usual and necessary machinery and appliances for transferring coal from lake vessels to the dock and into the dock pockets or bins, and from there to cars for shipment to the trade. The coal was unloaded from the vessels, and after pass-ing certain screens would be discharged into a chute leading to a pocket where it remained until transferred for shipment. The chutes were quite heavy, and the one causing the death of decedent had been out of use for some time and was filled with coal and coal dust. De-cedent and his fellow workmen were ordered by the superintendent or foreman to clean out this chute and the pocket to which it carried coal. In doing the work it was necessary to remove the coal in the pocket, upon which the chute to some extent rested, and when that was done the chute, by reason of the defective condition of its fasten-ings, arising undoubtedly from the elements and long-continued use without proper repairs, fell upon decedent and killed him. There can be no question on the evidence that the chute was in a defective condition, the fastenings holding it in position were rusted to such an extent as to render them insufficient to sustain it in position after the coal in the pocket had been removed. Nor can there be any serious question that a proper inspection of the chute would have dis-closed the defect which, had it been repaired, would have avoided the accident.

It is elementary that the master owes his servant the duty of exer-cising reasonable care in supplying to the latter safe instrumen-talities, and a reasonably safe place in which to perform his work, and this duty includes the matter of inspection from time to time, to the end that the instrumentalities and place of work may be main-tained in a safe and suitable condition. The rule stated applies to this case, and the evidence presented a question of fact for the jury whether defendant had performed the same. And, unless the con-

tention of defendant that the duty of inspection rested upon decedent be sustained, the verdict must stand. So that the important question on this branch of the case is whether the duty of inspection had been cast upon decedent as one of the duties of his employment. We think, and so hold, that the evidence made this alone a question for the jury.

Decedent's specific duty, and the one he was expressly employed to perform, was to oil the various gearings and bearings of the machinery attached to the plant; in addition to which he performed such other work as he was from time to time directed by his superiors. The structure going to make up the docks was very large and contained considerable machinery which was operated by motive power, and a proper performance of his duties as oiler necessarily took up a considerable portion of his time. There was evidence tending to some extent to show that he was charged with the additional duty of inspection, and to repair defects in the machinery or appliances, and when he could not do so himself, to report them to his superiors; and further that he was under direction to keep on the lookout for such defects. But the evidence is far from conclusive that defendant intended to impose upon him the entire responsibility for the safe condition of the premises, or the performance of its own obligations to keep the machinery in working order and free from defects. And the jury were warranted in concluding that defendant expected of him in this respect nothing more than it expected from all its servants.

The situation would no doubt be different had decedent's employment been specifically that of inspector, or if by rule or order he was made responsible for the condition of the instrumentalities with which he was required to work. 4 Labatt, Master and S. § 1338. But that rule does not necessarily apply to the facts here before the court. The particular chute causing decedent's death had been out of use for some time, it was filled with coal and coal dust, and the defect which caused it to fall, evidently existing for some time, though it was not open or obvious, could easily have been discovered by proper inspection. The evidence did not require the jury to find that decedent ever acted as inspector for this purpose, or that de-

fendant relied upon him exclusively to furnish information upon the subject. Nor does it show that the particular chute was one of the instrumentalities with or about which decedent was required to perform his daily work. On the contrary the evidence is undisputed that decedent was employed as an oiler of the machinery, and the question whether he was also charged with the general duty of inspection was one of fact. In this view of the case, which we think the record fairly sustains, we need not stop to consider whether the master may in this manner wholly relieve himself of the duty of providing his servants with safe appliances. Le Duc v. Northern Pacific Ry. Co. 92 Minn. 287, 100 N. W. 108.

3. A consideration of the charge of the court, taken as an entirety, discloses no substantial error, at least none which will justify a new trial of the action. The statement of the court to the jury that it was one of the absolute duties of the master to exercise reasonable care in providing his servants safe instrumentalities and a safe place to work, was abstractly correct. Of course where the master expressly imposes upon the servant the duty of inspecting the instrumentalities with which he performs his work, as to that particular servant the master is perhaps relieved from responsibility (Scott v. Eastern Ry. Co. of Minn. 90 Minn. 135, 95 N. W. 892), though the duty continues as to the other servants in the same service and who are not charged with the duty of inspection. In the case at bar the court distinctly said to the jury that if decedent was charged with the duty "to inspect the chute as to its safety, and he failed to do so, the plaintiff is in no position to claim that the defendant was negligent in that regard." In addition to this instruction the court further stated to the jury that defendant claimed that decedent was for "four years" prior to the accident "inspector of the building and of the machinery" therein, and the question whether the evidence sustained the claim was left for them to determine. The charge of the court upon the question of the severance of the relation of master and servant between decedent and defendant was correct. Taking all that the court said upon this question, it is clear that the jury were given to understand that, if decedent knew of the transfer by defendant to the sales company and thereafter continued in his work, he would be deemed

to have acquiesced in the change of masters. While the court did not use this precise language, what was said clearly conveyed the substance thereof to the jury, and they must have so understood. The court also fully submitted to the jury the questions of contributory negligence and assumption of risk, and the charge taken as a whole sufficiently included the substance of defendant's requests which were refused.

. This covers all that need be said. We have examined the record in reference to all the assignments of error and find no sufficient reason for ordering a new trial. The evidence supports the verdict.

Order affirmed.