CASPAR MAEHREN v. GREAT NORTHERN RAILWAY COMPANY.[1]

June 22, 1906.

Nos. 14,846—(133).

**Master and Servant—Inconsistent Orders.**

Action to recover for personal injuries sustained by a locomotive engineer by a rear end collision between two freight trains of the defendant. Defense that the plaintiff was guilty of contributory negligence in not complying with a rule requiring all trains to approach all stations and water tanks under control. *Held,* if compliance by the servant with a general rule is rendered impossible by other and inconsistent orders and duties imposed by the master, negligence cannot be imputed to the servant for not following the general rule.

**Contributory Negligence.**

If the plaintiff had his train under control as he approached the station, or if he did not, if he used due care and, under the circumstances of the case, did all that it was reasonably possible for him to do, consistent with other rules and duties, if any, imposed upon him by the defendant, to comply with the rule as to having his train under control, he would not be guilty of contributory negligence, otherwise he would be.

**Instruction to Jury.**

It was error for the trial court to instruct the jury to the effect that if the plaintiff exercised the care and diligence to keep his train under control ordinarily exercised by engineers under like circumstances he was not guilty of contributory negligence.

**Question for Jury.**

The evidence in this case was sufficient to take the case to the jury upon the question of the alleged contributory negligence of the plaintiff in not complying with the rule.

Action in the district court for Stearns county to recover $7,600 for personal injuries. The case was tried before Searle, J., and a jury, which rendered a verdict in favor of plaintiff for $5,000. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Reversed and new trial granted.

*M. L. Countryman* and *Geo. H. Reynolds,* for appellant.

*Donohue & Stephens* and *Calhoun & Bennett,* for respondent.

[1] Reported in 107 N. W. 951.

START, C. J.

Action to recover damages for personal injuries sustained by the plaintiff by a rear-end collision between two freight trains of the defendant at Osakis, this state, on September 27, 1904. Verdict for the plaintiff for $5,000. The defendant appealed from an order denying its alternative motion for judgment or for a new trial.

That the plaintiff was injured to some extent by the collision, and that it was caused by the negligence of the defendant's servants in charge of the head train, is not controverted.

1. It is, however, the contention of the defendant that the evidence establishes the contributory negligence of the plaintiff as a matter of law, in that he violated rule 53 of the defendant which provided that:

> All trains must approach all stations and water tanks between stations under control, and so proceed until the track is plainly seen to be clear. The responsibility for a collision at a station, or at a water tank between stations, will rest with the following or incoming train. This will not relieve train and enginemen from responsibility of protecting trains at stations and water tanks as provided by rules 49 and 57.

That is, by sending a flagman back a sufficient distance to warn other trains by the use of flags, torpedoes, or other signals.

Evidence was offered on the trial tending to establish the following facts: That the plaintiff was a locomotive engineer, and on September 27, 1904, at 2:25 o'clock a. m. he left Barnesville for Melrose, this state, in charge of a livestock train of twenty eight cars. The time schedule of his train to Evansville, and of a similar train preceding his own, was delivered to him. These particular trains had the right of way over all trains, except passenger trains, from Barnesville to Evansville, a distance of fifty six miles. The plaintiff reached Evansville one-half hour behind schedule time. Here he received an order fixing his time schedule to Melrose, the end of his run, with an admonition from the defendant's superintendent to the effect that he did not make good time to Evansville, and to try and reach Melrose on time. No time schedule of the head train from Evansville to Melrose was given to him. He also had an order directing him to run not exceeding ten to twelve miles between switches at Osakis. He reached a

point one and three quarters miles west of Osakis at 5:58 o'clock a. m. The morning was dark and foggy, and his rails slippery. At a point one and a half miles west of Osakis he shut off steam, applied the brakes and reduced the speed of the train to sixteen or eighteen miles an hour, and at a point one-half mile west of Osakis the speed was reduced to eight or ten miles an hour. It was downgrade and he sat looking ahead with his hand on the brake which was set. The speed was eight to ten miles an hour. The head train was delayed by a hot box, and stopped seventy five feet west of the first switch without sending back a man to warn, by flags, torpedoes, or other signals, other trains, as was the duty of those in charge of the head train. The collision occurred seventy five feet west of the first switch, not between the switches. The water tank was some nine hundred feet east of that point. The plaintiff at the rate he was running could have stopped his train in four hundred feet, but, owing to the fog, he could not see that distance. When he saw the caboose of the head train on the track it was too late to avoid the collision, and he let go of the brake, pulled the whistle rope, jumped off his engine, and was injured. He testified to the effect that, if the flagman or danger signal had been placed one hundred fifty feet back of the rear of the head train, he would have avoided the collision.

The statements of the plaintiff, made to the superintendent after the accident, differed in some material particulars from his testimony on the trial. The credibility of his testimony was for the jury, and his testimony tended to establish the facts we have stated. It is clear that the plaintiff did not have his train under such control, at the time of the collision, that he could have stopped it within a distance covered by the range of his vision.

It is the contention of the defendant that it was the plaintiff's absolute duty so to have his train under control that he could have stopped it within a distance limited by his range of vision, and that, failing so to do, he was guilty of contributory negligence as a matter of law. It is to be noted that rule 53 requires that all trains must approach all stations and water tanks under control and so proceed until the track is plainly seen to be clear, that it does not command the doing or not doing of any particular specific act, but that it is one calling for the

exercise of judgment and diligence on the part of the engineer, and further that it must be considered in connection with other rules, and other duties, if any, imposed upon him by the defendant. This case is to be distinguished from those cited by the counsel for the defendant which involved rules which were absolute in their terms and commanded the doing of a particular act, such as testing the brakes, or inspecting some part of the train. See Nordquist v. Great Northern Ry. Co., 89 Minn. 485, 95 N. W. 322 and Scott v. Eastern Ry. Co. of Minn., 90 Minn. 135, 95 N. W. 892.

In principle the case at bar is not essentially different from the case of Hall v. Chicago, B. & N. Ry. Co., 46 Minn. 439, 49 N. W. 239. The rule in that case somewhat differed in its terms from the rule here in question, but it was quite as absolute and mandatory as to the duty of engineers to have their trains under control when approaching and passing stations as is the rule in this case. In that case the court refused to give a requested instruction to the effect that it was the engineer's duty, while running through the yard and approaching the switches, to have his train under complete control so that he could stop it within the distance covered by his range of vision, and, failing to do so, would be guilty of contributory negligence. The refusal to give the instruction was held to be correct on appeal to this court, which held that the rule must receive a reasonable construction, and that the duty of the engineer under the rule must be determined in each particular case with reference to its facts and other rules and duties imposed upon him by the railway company. And further, that if compliance by a servant with a general rule is rendered impossible by other and inconsistent orders or duties given or imposed by the master, negligence cannot be imputed to the servant for not following the general rule.

The evidence in this case tending to show the time and place and circumstances of the collision, the time schedules given to the plaintiff by which to run his train, the admonition of the superintendent, and the order limiting the running time between switches at Osakis was sufficient to take the case to the jury upon the question of the plaintiff's alleged contributory negligence. We do not discuss the evidence, as there must be a new trial ordered upon another ground. It follows that the defendant's motion for judgment absolute was correctly denied.

2. The trial court, at the request of the defendant, correctly instructed the jury as to the duty of the plaintiff to obey the rule, and the effect upon his right to recover in case he disobeyed it. But in the general charge the jury were instructed that, if the plaintiff had control of his train at the time in question, or failing to have control of it, he exercised that care and diligence at the time to have or keep such control as is ordinarily exercised by engineers under like circumstances and conditions, then he would not be guilty of contributory negligence. This was error, for the instruction was to the effect that, if plaintiff exercised the care and diligence to keep his train under control ordinarily exercised by engineers under like circumstances and conditions, then he would not be guilty of contributory negligence. The importance and necessity of complying with the rule in question must not be minimized, for the safety of human lives and limbs depends upon such compliance. The jury should have been instructed to the effect that if the plaintiff had his train under control as he approached the station, or if he did not, if he used due care, and, under the circumstances of the case as disclosed by the evidence, did all that was reasonably possible for him to do, consistent with the other rules and duties imposed upon him by the defendant, to comply with the rule as to having his train under control, he was not guilty of contributory negligence; otherwise, he was so guilty. Or, in other words, the question for the jury was, did the plaintiff, under all the circumstances disclosed by the evidence, exercise due care—that is, ordinary care—to comply with the rule? If he did, he was not guilty of contributory negligence. If he did not, he was so guilty.

It is urged by plaintiff's counsel that the error was not a reversible one, for the reason that the charge taken as a whole was correct. It is the rule of this court not to reverse for errors in the charge of the trial court to the jury when it fairly appears from the charge as a whole that the jury were properly instructed and could not have been misled by any technical errors. However, the difficulty in this case is that the error was fundamental, and was repeated several times; hence it was manifestly reversible error.

3. The defendant also urges that the damages awarded are excessive. We have not considered this question, and we are not to be under-

stood as approving or criticising the verdict in this respect. It is unnecessary to do either in view of the fact that there is to be a new trial.

Order appealed from reversed and a new trial granted.