WILHELMINA SEARFOSS v. CHICAGO, MILWAUKEE & ST. PAUL
RAILWAY COMPANY and Another.[1]

January 15, 1909.

Nos. 15,897—(169).

**Contributory Negligence Question for Jury.**
> The plaintiff's intestate, a locomotive engineer, was killed in a collision
> between his train and cars of the defendant standing on his track. *Held*,
> that the question whether he was guilty of contributory negligence in
> failing to observe the rules governing the movement of his train was one
> of fact.

Action in the district court for Ramsey county by the administratrix of the estate of S. L. Searfoss, deceased, to recover $5,000 for the death of her intestate. The case was tried before Hallam, J., and a jury which returned a verdict for plaintiff for the amount demanded. From an order denying defendants' motion for judgment notwithstanding the verdict or for a new trial, they appealed. Affirmed.

At the time of the accident the locomotive was headed west but was coupled to the east end of the train. The rules of the Minneapolis Western Railway Company required the engineer "to keep a constant lookout on the track for * * * obstructions."

*F. W. Root*, for appellants.
*Morton Barrows*, for respondent.

START, C. J.

Plaintiff's husband and intestate on July 23, 1907, was an engineer in the employ of the Minneapolis Western Railway Company, hereafter referred to as the Western Company. At five o'clock in the morning of that day he was killed with his fireman in a collision between his engine and a string of defendant's box cars standing on the track over which his engine had the right of way. This action was brought to recover damages for his death on the ground that it was caused by the negligence of the defendant, whereby the box cars came upon the track. Verdict for the plaintiff for $5,000 and the defendant railway company

[1] Reported in 119 N. W. 66.

appealed from an order of the district court of the county of Ramsey denying its motion for judgment notwithstanding the verdict or for a new trial.

The record conclusively shows that the defendant was guilty of the negligence charged, and that it was the proximate cause of the death of the deceased. The only claim here urged by the defendant is that the undisputed evidence conclusively establishes the contributory negligence of the plaintiff's intestate, and therefore it is entitled, as a matter of law, to judgment in its favor notwithstanding the verdict. Briefly stated, the basis of this claim is that the rules of the Western Company required the deceased, as engineer, to keep a constant lookout on the track for obstructions thereon, and that he wholly failed so to do. The rules of the company required the engineer to keep a constant lookout for obstructions on the track, to occasionally look back for signals, and to give proper attention to his engine and appliances. It is obvious that he could not discharge all these duties at one and the same time, and the rules must receive a reasonable construction. So construing them, it is clear that it was the duty of the engineer to keep a constant lookout for obstructions, so far as it was reasonably possible to do, consistent with a discharge of other duties enjoined upon him. Hall v. Chicago, B. & N. R. Co., 46 Minn. 439, 49 N. W. 239; Maehren v. Great N. R. Co., 98 Minn. 375, 107 N. W. 951.

The engineer and fireman were both killed; hence there is no direct evidence as to what the engineer was doing immediately before the collision. The presumption is that he was in the exercise of due care and doing all that was reasonably practicable to observe all the rules; and therefore the burden was upon the defendant to establish his contributory negligence. It is not sufficient, to entitle the defendant to a judgment notwithstanding the verdict, that it may be manifestly against the great preponderance of the evidence. To entitle it to such a judgment, the undisputed evidence must conclusively establish a state of facts from which no other reasonable inference can be drawn, except that the deceased was guilty of contributory negligence. The evidence, as disclosed by the record, tended to show, with others, the following facts:

The business of the Western Company was transferring cars from its yards on the westerly side of the Mississippi river, at Minneapolis,

along its single and main track, crossing a bridge over the river, 2,060 feet in length, to a switch on the easterly side of the river. The track across the bridge, beginning at the west end thereof, curves to the left for 211 feet, thence for 977 feet it is straight, and for the rest of the way across, 272 feet, it curves to the right. About 2,700 feet east of the bridge is a dwarf switch for transferring trains of other roads to the Great Northern yards. At a point 1,100 feet east of the bridge is a semaphore, and 2,900 feet from the east end of the bridge is a switch tower, both operated by the towerman, who advises the switching crew of the Western Company by telephone as to obstructions below the semaphore. On the morning of the collision a train of forty two cars of the defendant came in on the track at the dwarf switch to transfer to the Great Northern yards. The grade of this track at this point inclined toward the river, and the crew in charge of defendant's train cut it in two, leaving a part of the cars standing on the grade without setting the brakes or in any manner protecting the cars, and they ran down the grade one thousand feet, and stopped at the foot of the grade, four or five of them resting on the end of the bridge, where no cars or engines had a right to be, except those belonging to the Western Company.

The track on the bridge curves sharply at a point where the defendant's cars stood, but the curve gradually lessened for the balance of the 872 feet of its total length. At about the time the defendant's cars were so left on the east end of the bridge, the switching crew of the Western Company, on the west side, were advised by the towerman that their track was clear as far as the semaphore, and the foreman gave a signal to that effect to the deceased, and to go ahead. Thereupon the deceased started his train, consisting of 25 cars, across the river, with his engine facing west, and backing his train over the bridge, as was the usual custom. He was on the side of his engine next to the outside of the curve as he approached the standing cars and until he was within a very short distance of them. When in this position, his view to the east was more or less obstructed by coal on the tender. The foreman of the train crew, who was on the top of the train, saw the standing cars on the track, and, it being apparent that the deceased had not seen them, he ran forward on top of the cars, waving his arms to attract the attention of the engineer; but failing, and seeing that the collision was inevitable, he turned back and was on

the third car from the engine when the collision occurred. The train was going at the rate of some five miles an hour when the collision occurred.

Our conclusion, from an examination of the whole evidence, is that the presumption that the deceased exercised due care and did all that he reasonably could to comply with all the rules was not conclusively rebutted, and that the question of contributory negligence was one of fact. It is urged on behalf of the defendant that, if the deceased had looked forward or backward immediately before the collision, he would have seen either the standing cars or the signals of the foreman in time to have avoided the collision. This seems plausible, but it is far from conclusive; for he could not look both ways at the same time, and if he was looking toward the standing cars it is not clear, from the evidence, that he must have seen them in time. Again, his duty to care for and operate his engine was just as imperative as looking forward or backward, a duty he could not discharge and look backward at the same time. The jury, in determining whether the deceased was guilty of contributory negligence, had a right to consider, with other matters, his position on the engine, the fact that his train was backing toward the obstructing cars, his position on the outside of the curve and whether it impaired his vision so that he did not see the cars in time to avoid the collision, the assurance he had received that his track was clear, and his knowledge that no other cars could rightfully come on the bridge.

We are not to be understood as suggesting that, if the deceased failed to exercise due care to observe the rules, the fact that he was assured that the track was clear and that no other cars had a right to come upon the track would relieve him from the charge of contributory negligence. But in the determination of the question whether he did in fact exercise such care the jury had a right to consider the evidence relevant to such fact in connection with the other evidence. The rules in question imposed upon the deceased independent duties, all of which could not be discharged at the same time. This necessarily required the exercise of his judgment as to when and under what emergencies he should discharge one duty, to the necessary exclusion of the others for the time being, and in so exercising his judgment the assurance of a clear track would be a factor.

Order affirmed.