NORA McMAHON, AS ADMINISTRATRIX, ETC. v. PHILIP
H. FLYNN AND ANOTHER.[1]

January 19, 1923.

No. 23,151.

**Liability of owner of automobile for his wife's negligent driving—pedes-
trians not outlaws at street crossings.**

In this action damages for the death of plaintiff's intestate, through
the negligent operation by the wife of the husband's automobile, were
given by a jury. It is *held*:

(1) The proof made the question for the jury whether the alleged
negligence of Mrs. Flynn in driving the automobile was the proximate
cause of the death of plaintiff's intestate.

(2) The evidence justifies the submission of Mr. Flynn's responsi-
bility for the negligence of his wife in the driving of the automobile
on the occasion in question.

(3) The contributory negligence of plaintiff's intestate was for the
jury.

(4) The evidence justified the submission of negligence in respect
to statutory signals, speed, control and place on the street of the
automobile.

(5) Auto drivers must use due care in approaching cross-walks when
pedestrians are crossing thereon. Their rights to cross are not sub-
ordinate to those of auto drivers.

(6) The instruction as to the presumption of due care of one killed
through the negligence of another, and as to the testimony of eye-
witnesses to overcome the presumption, was substantially correct.

(7) The damages though liberal cannot be held so large that this
court should attempt reduction.

Action in the district court for Ramsey county by the administra-
trix of the estate of Leo A. McMahon, deceased, to recover $7,500
for the death of her intestate. The case was tried before Haupt, J.,
who at the close of the testimony denied defendants' motions for
directed verdicts, and a jury which returned a verdict for $5,500.
From an order denying their motions for judgment notwithstanding

[1]Reported in 191 N. W. 902.

the verdict or for a new trial, defendants appealed.    Affirmed.

*Douglas, Kennedy & Kennedy,* for appellant.

*Sexton, Mordaunt & Kennedy,* for respondent.


HOLT, J.

From an order denying defendants' motion in the alternative for judgment or a new trial, they appeal.

The recovery was for damages on account of the death of Leo A. McMahon caused by defendants' negligent operation of an automobile. The occurrence may be briefly stated thus: Smith avenue, running north and south, crosses Sixth street in the city of St. Paul about where the latter street, running westerly, approaches a steep upgrade. Sixth street also angles off towards the northwest, beginning where the east line of Smith avenue intersects. The defendants are husband and wife, the husband being the owner of a Buick touring car. At about 10:30 p. m. on May 1, 1920, the wife, driving this car westerly on Sixth street, was approaching the east crossing of Smith avenue as Leo A. McMahon with a companion were on that crossing going southerly towards the south sidewalk on Sixth street. Estimates of the speed of the car differ, but range from 8 to 20 miles per hour. The evidence as to the movements of the deceased and the automobile a few seconds before the collision varies. The different witnesses did not notice what was taking place at the same moment of time nor from the same viewpoint. There is testimony tending to show that the auto was on the left of the center of Sixth street immediately before McMahon was hit. Both the front and rear right wheel ran across his body, which lay to the left of the center of Sixth street. This location of the body, with the fact that it was upgrade, that the car was not stopped until it passed the body 3 to 6 feet, and the testimony of Mrs. Flynn that deceased started to run away from the car when she was about 15 feet from him, and that she nevertheless overtook and ran him down, surely made a question for the jury as to negligent speed, control and position of the auto. Roberts v. Ring, 143 Minn. 151, 173 N. W. 437, indicates that a much slower speed and less opportunity to observe the person struck than are disclosed in this record require the sub-

mission of the negligence of the driver to the jury. It was properly submitted in this case.

It is also claimed that Mr. Flynn was entitled to a directed verdict. We think not. The auto was provided by him for business and pleasure. True, Mrs. Flynn learned to drive a car without his knowledge and contrary to his wishes. But he admits that, after she had informed him that she could drive, he consented to her using the car, but forbade her to take the children along, and told her not to drive in the congested district. On the occasion in question, the car was used to take a girl who had been in the employ of defendants for some time to the depot. Mrs. Flynn's brother, an expert driver, drove the car to the depot, and back to a filling station on Sixth street 2 or 3 blocks east of the place of collision. Mrs. Flynn then took charge of the car.

Mr. Flynn testified: "I had no objection—really I had an objection, but I did give my consent to let her drive the car in the places I referred to, in the residential district." Ques. "That is, during your absence she could? Ans. "Any time." Ques. "The car was in her possession during your absence to use for those purposes?" Ans. "She might use it in that way if she wanted to."

Mr. Flynn was away from home a great part of the time, and was in Texas on the evening here in question. Mrs. Flynn testified she had been driving the car for about a year with her husband's knowledge. It appears that he objected principally to her taking the children along when she drove because they were small. She was asked on cross-examination: Ques. "In other words, he did give you permission to drive the car then?" Ans. "Well, he didn't give me exactly his permission, but he didn't demand that I should leave the car alone either. He never put any serious objection on anything that I had ever done." What is said in Richardson v. Weiss, 152 Minn. 391, 394, 188 N. W. 1008, as to the jury's province to determine the effect of testimony, even though there is no conflict, where it appears that it comes from witnesses whose interests are solely with the litigant calling them, applies here. Johnson v. Evans, 141 Minn. 356, 170 N. W. 220, 2 L. R. A. 891, and the many subsequent cases involving the responsibility of the head of the family for negli-

gent operation by any member of the family of a car owned and kept for the pleasure or convenience of the family, required the submission of Mr. Flynn's liability to the jury. And the evidence sustains the verdict against him.

The claim is made that the deceased was guilty of contributory negligence. It is true the person walking with deceased got across safely, and there is some testimony that deceased turned back after having passed the course of the automobile, thus getting into the path of danger. However, this testimony is to be considered in connection with that alluded to above from which the inference is permissible that the car was swerved to the left of the street so much that deceased considered the only avenue of escape was to turn to the northwest, and, at that, he never reached the right side of the street where the course of the auto ought to have been. It must be held that defendants did not conclusively establish their defense of contributory negligence. The presumption that the dead man used due care was for defandants to overcome.

The court gave this instruction: "Every violation of a positive law constitutes negligence. Consequently, if this car was being driven at an unlawful rate of speed, if the signals prescribed by the statute were not given, or if the car was driven on the left side of the road instead of the right, such violations would constitute negligence." And in that connection an instruction was given as to signals required on approaching a pedestrian in the street as contained in section 2632, G. S. 1913, as amended. Mrs. Flynn certainly approached and overtook McMahon in the street. Excessive speed was charged in the complaint. The statute does not fix any certain speed, but provides it shall not be "greater than is reasonable and proper" for a given situation. G. S. 1913, § 2635. It was for the jury to determine whether or not a violation of this statute caused McMahon's death. Attention has already been called to facts warranting a finding that Mrs. Flynn was on the wrong side of the street.

We need not go through the instructions requested and refused. As far as they expressed applicable law they were embodied in the charge. Of course this request was properly denied: "You are

instructed that if deceased saw or could have seen the approaching automobile and the speed thereof, when he attempted to cross the street, your verdict must be for the defendant." Pedestrians have not yet become outlaws at street crossings. At night it is not easy for a pedestrian to judge of the speed of an approaching auto with glaring headlights. Drivers must realize that fact and slow down at street intersections when people are crossing in front of them. All pedestrians are not sprinters. Their use of crossings is not subordinate to the auto driver's use.

After stating that the desire to live is so great that when a person has met death in some untoward occurrence the presumption is that he was then in the exercise of due care, the court continued: "But that presumption may be overthrown and completely annulled by testimony of people who were present, who were eye-witnesses of the accident, and who speak of their knowledge of the manner in which the accident occurred. Now in this case a number of eye-witnesses have testified. Some came upon the witness stand and others you heard their testimony read who spoke from the witness stand on the previous trial in this case, and it is for you to say from this testimony whether or not this presumption of care on the part of the deceased is completely overthrown and annulled by the evidence of the witnesses who were spectators of this tragedy." The assignment of error is to the last sentence of the quoted part, and especially to the use of the word "completely." When read in connection with what precedes it is not misleading. The testimony of the eye-witnesses varied as to what deceased did. The burden was upon defendants to establish contributory negligence, and the presumption referred to was for them to overcome.

In Searfoss v. Chicago, M. & St. P. Ry. Co. 106 Minn. 490, 119 N. W. 66, Chief Justice Start used this language: "Our conclusion, from an examination of the whole evidence, is that the presumption that the deceased exercised due care and did all that he reasonably could to comply with all the rules was not conclusively rebutted, and the question of contributory negligence was one of fact." Nelson v. Northern Pacific Ry. Co. 119 Minn. 347, 138 N. W. 419. There is nothing in Bowers v. Chicago, M. & St. P. Ry. Co. 141 Minn. 385,

170 N. W. 226, that holds the presumption of due care is gone if conflicting testimony of eye-witnesses is adduced. Sheehy v. Minneapolis & St. L. Ry. Co. 132 Minn. 307, 156 N. W. 346. No request to modify the language used was made when the charge was delivered, and even if a word is amiss it should not result in another trial. R. W. Bonyea Piano Co. v. Wendt, 135 Minn. 374, 160 N. W. 1030.

The charge taken as a whole was clear, appropriate, complete and fair. The court's disclaimer of mathematical proficiency could not have prejudiced defendants. He left the computation of the present worth to plaintiff of the future contributions to be expected from deceased, had he lived, to the jury.

The first jury gave a verdict for $5,000, the second for $5,500. Plaintiff, the mother and sole beneficiary, had a life expectancy of about 12 years. When her son met death he was 29 years old, earning $100 per month, about one-half of which was received by her. He had lately had a raise in salary. As he grew older he could expect more, and likely he could be more generous to his mother, as her needs might increase with old age. The award is liberal, but not so large that this court should undertake to prune it down.

The last assignments we need notice are the ones relating to the claim that at this trial the only issue was Mr. Flynn's liability, and that the damages recoverable could not exceed $3,000. After the first trial, where a verdict for $5,000 against both defendants was returned, and, on a motion for new trial, the court made an order denying the motion as to Mrs. Flynn, if plaintiff within ten days filed her consent to a reduction of the verdict to $3,000, "if such consent is not so filed within said time, a new trial as to Stella Flynn is granted, but the motion for a new trial as to Philip Flynn is hereby granted, the only question remaining open for litigation upon such trial being the question of his liability upon the reduced verdict in favor of plaintiff." In the first trial, the court had instructed the jury that Mr. Flynn was as a matter of law liable, if Mrs. Flynn was found to be. Deeming this wrong a new trial was ordered as to him. No consent to a reduction was filed by plaintiff.

It requires no argument to show that the issues therefore stood for the second trial precisely as if there had been no previous trial or order upon the motion for a new trial.

The order is affirmed.