## LAMERTON v. McGILL.

No. 21361. Opinion Filed Nov. 22, 1932.

Rehearing Denied Dec. 27, 1932.

McKeever, Elam & Stewart, for plaintiff in error.

Simons, McKnight, Simons & Mitchell, for defendant in error.

KORNEGAY, J. Suit was brought in this case by a pedestrian against an automobilist for personal injuries, arising from being struck by his automobile on Ninth street, at its intersection with Broadway in the city of Enid, Okla., on January 15, 1929,

at 7 o'clock p. m. According to the petition, plaintiff and his wife were proceeding north, on the west side of Ninth street in the sidewalk line, and had passed the middle line of Broadway when struck by defendant's car, which was being driven in violation of the city ordinances and the state laws, and carelessly and negligently, by driving the automobile going east and on the north side of the street. Damages in the sum of $10,000 were asked. Suit was filed March 9, 1929.

March 26th an answer was filed consisting of a general denial, and a claim of contributory negligence, arising from a corner turn by defendant, and statement made that after the plaintiff saw the lights of defendant's car, he deliberately placed himself in the path of the car, thereby thwarting an effort to avoid the collision by defendant, the language being:

"* * * and plaintiff caused the defendant, as soon as defendant observed plaintiff, to take a different course, which seemed to defendant would clear the plaintiff, but said plaintiff instead of proceeding onward as defendant had a right to presume plaintiff would proceed, he stopped and deliberately allowed the car to strike him. When by exercising due diligence and proceeding ahead, as he should have done, the car would have missed plaintiff."

There was a denial of the extent of the injury.

Trial was had on November 15, 1929. Various witnesses were introduced, showing the accident, and according to these, plaintiff, accompanied by his wife, was crossing the street in the exercise of due care, and had passed the middle line of a 54-foot span, probably 6 feet, and were standing awaiting the passage of a car from the east and crossing their line of travel, before endeavoring to cross the 21-foot space between them and the curb on the north side of the street, when struck by a car from the west. Plaintiffs, when so struck, were on the west side of Ninth street in the space used by pedestrians. However, when the facts were ascertained as to where the car came from that struck plaintiffs, it appears to have started on the north side of Broadway about 75 or 100 feet west of the northwest intersection of Ninth street and Broadway, and to have proceeded southeasterly across the line of the west-bound traffic to a point in Broadway west of the west line of Ninth street, and turned northeast and crossed Ninth street, making the turn at a point some feet north of the middle line of Broadway where plaintiff had stopped awaiting the passage of a west-

bound car, instead of going east of the intersection center. One could scarce imagine a more flagrant case of reckless driving, under the conditions surrounding the automobilist.

There was positive testimony of two medical experts as to plaintiff's injuries, their extent and probable duration. None appeared on behalf of the defendant, his attorneys apparently relying on his professional standing as a physician to strengthen his deductions as an expert. The following is illustrative of the testimony of defendant below, present plaintiff in error:

"Q. When you got over to the railway track you knew you was cutting the corner and by that you drove and hit Mr. McGill pretty badly when you heard the machine bump, you had gotten over there before you heard your daughter-in-law scream? A. Yes, sir. Q. When you was over there in the middle, why didn't you pull to the right? A. I couldn't explain that it was a bad night and I couldn't see good and I never figured there was any one in front there. Q. Do you drive along the streets where you know there is other traffic when you can't see where you are going? A. Well, there was mist on the windshield, but I was trying to see. Q. You was seeing where you was going all the time, you was supposed to see all the time? A. Yes, sir. Q. Then you was on the wrong side when you was on the track? A. I have got as much right to the track as Jim McGill. Q. About what extent of the track had you gotten your car when you swerved? A. I couldn't say just where I was from the center of the tracks when I turned to the left. Q. Then you came up there along close to the center with your car and turned to go north without giving any warning? A. Of course we were watching in front. Q. You could see to turn that way then? A. I think so. Q. You say the south rail was about the middle of your car? A. I think it was. Q. You were intending to go north you say? A. Yes, I was intending to come up there and go north on the right hand side; my intention was to get to the corner and go north. Q. You did go to the left, and why did you? A. I expected to be within the limits and able to turn where I should turn. Q. Then why did you get over on the tracks? A. Because I had a right to drive there; that is public property for a man to drive in. Q. You was headed to the northeast, was the wheel on the track? A. Yes, just a little bit. Q. When you heard your daughter scream, why didn't you turn back to where you would strike the intersection; why didn't you turn back then? A. Because it might have knocked him down and killed him. Q. You say you was on the track because you had a right to be? A. I think that is a public street. Q. When you turned there in the street with your car didn't you intend to go on down the center? A. Not in the center of the car track. Q. You got right on the middle of that one track and drove on there and turned north on the left hand side of the center? A. Exactly. Q. You did cut the corners, didn't you, Doctor? A. Cut the corners, well part of it did, the back wheel did. Q. That is the way you remember it, just as near as you can? A. Yes, sir."

And further:

"Q. You didn't try to stop when your daughter screamed, did you? A. Yes, I tried to stop; I couldn't stop until I slowed down; I shut her down just like that. Q. Where did you say your car was located as you felt the impact in hitting Mr. Mc-[illegible] with reference of it being off of the track or on it? A. Well, I believe I was on it; I believe I was to the north side when I hit him. Q. Then if Mr. McGill was standing still and you had gone on east to the center of the intersection and turned north, there would have been no accident? Objected to by counsel for defense in asking the witness for a conclusion, and not the proper person to answer the question. Sustained by the court. Q. You say it was a cold and misty night, and the mist was freezing? A. Yes, sir; I think it was. Q. As I understand, as you came up Jim McGill was on the south side of the car, or right side of the car when he was hit? A. Yes, sir."

The court charged the jury, defining the issues and the duties of the parties, and gave the law of negligence, contributory negligence, emergency action, and damages for personal injury. There were 18 instructions, and numbers 6, 9, and 10 were excepted to by defendant. The verdict was unanimous and for $3,500 damages, followed by motion for new trial on grounds of excessiveness in recovery, and the refusing and giving of instructions. The assignments of error are as follows:

"1. Said court erred in overruling the motion of plaintiff in error for new trial.

"2. That the verdict of the jury and judgment of the court are not sustained by the evidence and are contrary to law.

"3. Error of the court in giving to the jury instructions No. 6 and No. 10 and error of the court in amending an instruction offered by the plaintiff in error and given to the jury as amended, being instruction No. 9.

"4. For other errors of law occurring at the trial, to which the plaintiff in error at the time excepted.

"Wherefore, plaintiff in error prays the court that said judgment so rendered and verdict of the jury may be reversed, set aside and held for naught, and that the said plaintiff in error be restored to all of his rights that he has lost by the rendition of

such judgment and verdict, and for such other and further relief as to the court may seem just and proper."

The argument is as follows:

"We desire to present to this court only two propositions which were set forth in the motion for a new trial.

"First. The verdict is excessive.

"Second. The verdict is contrary to the law and evidence."

Argument is made that the plaintiff was guilty of contributory negligence which caused the injury, because he did not discover the defendant's car and avoid it, and he stopped in the center of the street car tracks without looking west. A careful reading of the testimony is convincing that the plaintiff was not guilty of negligence, and was merely exercising the right accorded to a pedestrian to cross the street and to stop to allow an observed car to pass, and was hit by a car traveling on the wrong side of the street, that no one would naturally look for at such a place.

The argument is made that the recovery is too large, and disparaging distinction is made between the testimony of a chiropractor and a physician who used chiropractic methods, and a physician who was a member of the "Enid Clinic of the Enid General Hospital, which of itself is sufficient to attest to his high ability as a physician and surgeon." Argument is made in the brief of plaintiff in error, as follows:

"We have taken exception to instruction No. 9 offered by the court wherein the court says: 'Plaintiff is presumed to know, or appreciate danger which under the circumstances would have been known or appreciated by an ordinarily prudent person.'

"It is our contention that the law makes one know and appreciate danger and the court should have instructed the jury that the plaintiff was bound to know and appreciate the danger shown by the evidence."

Counter brief has been filed claiming the damage was not excessive, and that the plaintiff had a right to be where he was when struck, and citation of several cases is made to establish that a pedestrian had rights coequal with the automobilist, and quotes from McMahon v. Flynn (Minn.) 191 N. W. 902, as follows:

" 'Pedestrians have not yet become outlaws at street crossings. * * * Their use of crossings is not subordinate to the auto driver's use' "

—and from Mosso v. Stanton Co. (Wash.) 134 Pac. 941, as follows:

" 'Plaintiff while crossing to the east side of the street was struck by a motor truck coming from the north. In the center of the street were street car tracks and the testimony for plaintiff showed that he had reached the middle of the street between the east and west tracks, while that for the defendant showed that he was inside the west rail of the west track. A city ordinance received in evidence required drivers of automobiles to keep to the right and as near to the right-hand curb as possible; held, that as the plaintiff had reached a point practically outside the zone of danger reasonably to be anticipated from automobiles coming from the north and where it was his duty to begin looking south for vehicles, his negligence at the time was a question for the jury, even assuming that he failed to look north before starting to cross the street'."

A careful examination of the evidence is convincing that the jury were warranted in rendering the verdict they did, and that the court did not commit error prejudicial to plaintiff in error.

The case is therefore affirmed.

LESTER, C. J., and RILEY, HEFNER, CULLISON, SWINDALL, ANDREWS, and McNEILL, JJ., concur. CLARK, V. C. J., absent.