EMILY W. GROSS v. GENERAL INVESTMENT COMPANY
AND ANOTHER.[1]

March 15, 1935.

No. 30,160.

[1]Reported in 259 N. W. 557.

24

*Merritt U. Hayden* and *Doherty, Rumble & Butler,* for appellants.
*Kerr, Nelson, O'Neill, Mohan & Dudley,* for respondent.

HOLT, JUSTICE.

Defendants appeal from the order denying their motion in the alternative for judgment notwithstanding the verdict or a new trial.

William J. Gross, plaintiff's decedent, fell into a freight elevator shaft in defendants' building in the city of St. Paul on March 20, 1933, and received injuries which caused his death. This action by the executrix of his estate, his widow, was brought to recover damages. She alleges that defendants negligently maintained this elevator without proper barriers to protect persons from falling into the elevator shaft and wrongfully failed to maintain said elevator and elevator door according to the provision of a specified ordinance

of the city, and carelessly failed to light the entrance to said elevator. Defendants denied the negligence alleged against them, pleaded the provisions of a contract, made with the decedent and his son, as a defense, also averred that decedent assumed the risk and by his negligence caused or contributed to his injury. The issues were submitted to a jury and a verdict for $7,500 for plaintiff was rendered.

The evidence discloses that the four-story building or buildings in question front on Fifth street and extend southerly to the alley running east and west between said street and Fourth street. The west wall is on Wacouta street and the east on Rosabel street. The buildings appear to have been vacant except the second story of the westerly part, which was occupied by a printing company. A heavy brick wall separates the westerly part from the easterly. This wall constitutes the westerly part of the elevator shaft. The northerly part of the shaft is 31½ feet north of the rear entrance in the alley. The southerly part of the shaft is 24 feet 2 inches north of the alley entrance; and the easterly part of the shaft is 8 feet and 6 inches east of the brick wall or westerly part of the shaft; on this east side is the entrance gate to the elevator 6 feet wide. The rear entrance from the alley to the first floor or shipping room is 5 feet 5 inches wide. There is a partition of some sort inclosing a space of 18 feet wide by 31 feet 6 inches long of the shipping room, the elevator occupying the northwest corner thereof. There are no windows in the partition, and the only light for this room is what comes from the rear entrance door and whatever might come through the elevator shaft. The decedent and his son, partners in the business of roofing, had made a contract with defendant to repair the roofs of these buildings and had started on the work about ten days before the accident. There were runways and stairways that might have been used by the men to reach the roof, but these were not easy of access and were also without proper light. It is not contended that the elevator was not to serve as means of access to the work. On the day of the accident snow was falling to such an extent that the men were unable to continue work on the roof. One of the roofers, Vogt, about ten a. m., met

the decedent in the alley mentioned. They decided to view the condition of the repairs and came through the alley entrance to take the elevator up. Vogt walked ahead. He testified it was so dark near the elevator that he could not see a post which he had to pass near the elevator gate. The gate to the elevator entrance on this floor is made of vertical slats nailed to horizontal four-inch boards at the top and bottom. The gate when down or closed comes within about 33 inches of the floor. It moves in grooves into which the ends of the two horizontal boards extend. The elevator is operated by a rope or cable. This cable can be reached on the easterly side of the gate where the first slat next to the frame is missing. By pulling a chain attached to the gate it unlocks and can be pushed up so a person can enter the elevator; but the elevator cannot be brought down if this gate is pushed up from a closed or down position. As to the accident, Vogt testified that he looked up the shaft and saw that the elevator was at a floor above, put his arm through the opening in the gate, gave the cable a pull, and in the act of so doing he heard a crash and a body fall into the shaft. He sent the elevator to the top, went to the bottom of the shaft, and there found Gross unconscious. He had fallen 14 feet. In the top of the elevator cage was an electric light, but Vogt says it was not lit. An examination afterwards revealed that the lower board to which the vertical slats of the gate were nailed had a transverse crack through it so that it could be pulled slightly apart, and yielded to lateral pressure.

The chief assignments of error are addressed to the propositions that defendants were entitled to a directed verdict and to judgment notwithstanding the verdict, and that the verdict is not adequately sustained by the evidence. If one proposition is correct, the others are also. This was not a passenger elevator in the ordinary business building. But it was subject to the provisions of ordinance No. 7210, § 14-39 [Building Code, 1930, p. 198] of the city of St. Paul, which requires freight elevators to have gates sufficient to withstand a lateral pressure of 250 pounds applied at any point of the gate, and that [§ 14-39(e)] "the lower edge of the lowest horizontal member of any freight elevator gate, when

closed, shall not be more than two (2) inches above the sill." This elevator gate when closed left an opening between its lower edge and the sill or floor of 33 inches instead of no more than two inches. That the gate was installed before the ordinance was enacted does not excuse noncompliance with its provisions. Defendants' evidence that the break, which Vogt testified to have found after the accident in the lower horizontal board of the gate, had existed for more than a year does not aid the defense, for it also tended to show that thereby the lower part of the gate gave on pressure. The question is whether the condition of the gate in connection with the darkness of the place caused Mr. Gross to fall into the shaft. The only person present was Vogt, but he was unable to see what happened because of the darkness. From all the circumstances it would seem that the jury could conclude that when Gross took his last step his foot went into the open space below the gate, that he lurched forward, struck against the gate, and that its lower part gave way sufficiently to let him slip into the pit. Vogt's testimony is positive that the gate was not raised. The jury could readily reject the suggestion that Gross, a 67-year old man, six feet tall, deliberately ducked under the closed gate. He had been on the elevator four or five times before and knew that entrance was not by ducking underneath. Furthermore, the court charged the jury as a matter of law that if the decedent stooped or crawled under the gate and thus fell to his death there could be no recovery. There is no evidence that he ever operated the elevator. It is not absolutely necessary for plaintiff to prove the precise manner in which Gross came to fall into the pit. He did fall in; and if any of the alleged negligent acts or omissions of defendants have been proved which reasonably may be found the cause of the fall and the resulting death, the verdict must be sustained. We think the jury could find that the open space of 33 inches between the bottom of the closed gate and the floor or edge of the pit was the cause of Mr. Gross's fall into the pit in the manner above suggested. Such an opening could be found a negligent contrivance even in the absence of the ordinance. Add thereto the lack of light and the frail construction of the gate, and the jury had warrant to find

defendants negligent. One could wish clearer proof that such negligence caused Gross to fall into the shaft. Defendants urge that this is conjectural and speculative. Accepting Vogt's testimony as true, and we see no ground for rejecting it, we think the only cause for his fall is that one of his feet went under the gate as above suggested.

It is also contended that even if there be evidence to sustain the charge of defendants' negligence, the decedent as a matter of law assumed the risk of injury therefrom and his own negligence contributed to cause his fall; hence the verdict cannot stand and defendants should have judgment notwithstanding. We do not think either defense appears as a matter of law. Both issues were submitted to the jury under a charge as favorable to defendants as the law permits. Gross being dead, and Vogt, the only one present, being unable to see what occurred, the presumption of due care obtains and prevents the court as a matter of law from holding that the defense of contributory negligence is established. We likewise think the assumption of risk was for the jury and not the court. Gross had been in the poorly lighted room only four or five times, and it is not for the court to say as a matter of law that he fully appreciated or understood the dangers to be encountered from the negligence proved against defendants.

But defendants also urge the provision of the contract under which Gross and his son were upon the premises as decisive of their right to judgment notwithstanding the verdict. The provisions which are thought applicable are:

"The contractor shall examine the site and determine for himself the conditions surrounding the work. He shall assume full responsibility for any expense to him which may arise from these conditions. * * * The contractor shall maintain such insurance as will protect him and the owner from claims under workmen's compensation acts, and from any other claims for damages for personal injury, including death, which may arise from operations under this contract. * * * The contractor shall erect substantial barricades, fences, walks, shelters, provide and maintain danger

signals and warnings where necessary and do whatever else may be necessary and shall observe and obey all laws and ordinances relating thereto."

We think these and other like provisions in the contract were intended to hold the owners, the defendants, harmless from the acts and omissions of Gross and son and their employes while repairing the roof under the contract. It in no sense can be held as a release from the negligence of defendants or an undertaking to assume the risk arising out of their negligence or fault.

Error is assigned upon the ruling permitting plaintiff to prove that this gate was not constructed in the same manner as the gates above. Those above when closed came down to the floor and did not leave the 33-inch open space like the one on the first or shipping floor. Those gates were a part of the elevator and might be shown as a part of the instrumentality involved in the accident. It is not perceived how it could wrongfully affect defendants.

Errors are assigned upon certain instructions given as well as upon certain refused. No just criticism can be made upon the one relating to damages predicated upon decedent's probable pecuniary contribution to the widow. Nor can a new trial be based upon a mere matter of advising the jury as to the order in which the issues submitted should be determined. This instruction is challenged:

"With reference to the presumption of due care that accompanies the plaintiff, the burden of overcoming that presumption rests upon the defendants."

This was stated at the end of the charge because of an exception then taken by plaintiff's counsel to this part in the body of the charge:

"In considering this question of contributory negligence of the deceased, it is the law that one who has lost his life in an accident is presumed to have exercised due care for his own safety. This presumption may be overcome by direct proof or by facts and circumstances, and it is for you to determine whether he was free from contributory negligence or whether his conduct was negligent in

any respect, and, if so, whether his negligence contributed to cause the accident."

In legal treatises and some decisions courts have had occasion to make nice distinctions between the weight to be attached to presumptions as against evidence. 5 Wigmore, Evidence (2 ed.) § 2491; 1 Greenleaf, Evidence (16 ed.) p. 102; Duggan v. Bay State St. Ry. Co. 230 Mass. 370, 119 N. E. 757, L. R. A. 1918E, 680; Stack v. General Bak. Co. 283 Mo. 396, 223 S. W. 89; Western & Atlantic R. Co. v. Henderson, 279 U. S. 639, 49 S. Ct. 445, 73 L. ed. 884. But all consider that where a presumption may be invoked by one party the other party must go forward with proof of want of due care which caused or contributed to cause the death. It seems to us that in a case like the instant, where defendants have the burden of proving the defense of contributory negligence of plaintiff's decedent, who under our law is presumed to have been in the exercise of due care when he met the fatal accident, no more accurate and at the same time understandable instruction could be given a jury than was here given in the body of the charge. We do not think the short sentence added at the end of the charge could have misled the jury in any respect. There certainly is nothing in Carson v. Turrish, 140 Minn. 445, 168 N. W. 349, L. R. A. 1918F, 154; McMahon v. Flynn, 154 Minn. 326, 191 N. W. 902; Hawkins v. Kronick C. & L. Co. 157 Minn. 33, 195 N. W. 766; Aubin v. Duluth St. Ry. Co. 169 Minn. 342, 211 N. W. 580; Jasinuk v. Lombard, 189 Minn. 594, 250 N. W. 568, cited by defendants, which may be said to disapprove the instructions now assailed.

Error is assigned upon the refusal to give requested instructions numbered 5 and 7. No. 5 reads:

"If you believe that the deceased simply walked into the elevator gate and then in some fashion fell under the gate and into the elevator pit, you are instructed that he was guilty of negligence as a matter of law and your verdict must be for the defendants."

The evidence, in our opinion, does not make the instruction applicable. There is no testimony that the elevator was there. If it

had been, Gross could not possibly have got to the bottom of the pit. No. 7 reads:

"Or if you find that Mr. Vogt raised the elevator gate in order to manipulate the cable and that while the gate was up the deceased walked into the shaft, your verdict must be for the defendants."

There was no other testimony than Vogt's as to the position of the gate, and his was positive that it was not raised. There being no evidence to support such a finding, it cannot be held error to refuse the instruction. The instruction would only be proper on the supposition that Vogt's testimony was wilfully and knowingly false. There is nothing in the record to justify such conclusion.

The claim is also made that the verdict of $7,500 is excessive, and there is no basis in the evidence upon which to compute the pecuniary loss from his death to plaintiff as the widow of deceased. She testified that in recent years her husband contributed $250 a month to their support; that she handled the family finances, and he would bring home a check for $250 each month for maintaining the household, including light, heat, and doctor's bills. For the purchase of automobiles and the expenses of running the same and his personal expenses, he paid. He was in active business. Whether he contributed this monthly sum from his earnings or from his savings would seem of no real consequence. The amount of regular contribution is indicative of the pecuniary loss sustained by his next of kin through his untimely death.

The order is affirmed.