HORACIO A. CABRERA, Plaintiff and Appellant, *v.* NARCISO DOVAL AND BASILIO DÁVILA, METROPOLITAN BLOOD BANK, Defendants and Appellees.

No. 11195. Argued May 3, 1954.—Decided June 29, 1954.

*Ramón H. Vargas* for appellant. *Celestino Iriarte* and *F. Fernández Cuyar* for appellees.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

On May 15, 1953 Horacio A. Cabrera went to the Metropolitan Blood Bank for the purpose of donating 500 cc. of blood to be given to his wife. After undergoing certain tests, the desired amount of blood was extracted. When getting up from bed he fainted as a result of the weakness produced by the extraction, and fell to the floor suffering injuries on the face. A few months later he filed an action for damages in the San Juan Court against the owners of the Blood Bank

for the injuries thus sustained. In the complaint he charged defendants with negligence (1) in failing to take the necessary precautions to prevent plaintiff from falling; (2) in advising plaintiff that he could get out of bed; (3) in not anticipating that, due to plaintiff's weakness, an accident such as the one herein alleged might occur.

The defendants filed a petition for summary judgment alleging that "there is no actual controversy in this case as to the material fact that plaintiff before commencement of this action relieved and released defendants in writing from all liability arising from the blood donation described in the complaint at bar, as well as from any consequence arising directly or indirectly from his donation." The petition was accompanied by a release or exemption signed by plaintiff, which reads in its pertinent part as follows: "I donate my blood of my own volition to the Metropolitan Blood Bank to be used in such manner as this institution may see fit. I further release and discharge the Metropolitan Blood Bank or its successors from all claim or demand of any kind whatever which I or my legal heirs, executors, or administrators may have or do have against it or against its successors, as a result of my blood donation, to which I have submitted or will submit myself, and from any consequence arising directly or indirectly therefrom."

After hearing the parties on the petition, the lower court rendered summary judgment dismissing the complaint. Plaintiff took this appeal alleging that the release is contrary to public order and is therefore null and void.

▮ The judgment appealed from is erroneous and should be reversed, although for reasons other than those adduced by appellant. The action exercised in this case is predicated on the provisions of § 1802 of the Civil Code (1930 ed.) that a person who by an act or omission causes damage to another when there is fault or negligence shall be obliged to repair the damage so done. Section 4 of the same Code provides that rights granted by the laws may be re-

nounced, provided such renunciation be not contrary to law, to public interest, or public order, or prejudicial to the interest of a third person.

Sections 1069 and 1207 are closely related to this provision of general character. The first Section declares that impossible conditions, those contrary to morality, and those forbidden by law, shall annul the obligation depending upon them, and the second, that the contracting parties may execute such agreements, clauses and conditions as they may deem advisable, provided they are not in contravention of laws, morals or public order. The Code thus consecrates the freedom to contract bearing in mind, first of all, the will of the contracting parties, which must prevail provided it is not in contravention of law, good habits, morals, or public order. The lower court held that the release signed by plaintiff-appellant is not repugnant to the limitation imposed by law on the freedom to contract, and concluded that "the reasons of public order which would warrant the invalidity of anticipatory exemptions or releases are not present here." [1] Consequently, the court considered that the document was sufficient to release defendants from liability for their negligent acts. We concede, by way of argument, that the release in the instant case, which in fact is an agreement not to sue, is not contrary to public order, a question we find no need to decide at this time, if, on the other hand, we conclude that that document does not have the scope and effect given it by the lower court, after an examination in the light of the prin-

---

[1] The lower court reached this conclusion after setting forth two examples of invalid release, to wit: renunciation by a laborer in favor of his employer of compensation for occupational damages, and release in favor of a public service enterprise.

In support of the conclusion that the "release" in the instant case was not in contravention of any principle of public order, the trial court cited the case of *Boll* v. *Sharp & Dohme, Inc.*, 107 N.Y.S. (2) 174. However, this case had been overruled shortly before by the Appellate Decision of the Supreme Court of New York, although not on the basis of the validity or invalidity of the agreement therein involved. *See Boll* v. *Sharp & Dohme, Inc.*, 121 N.Y.S. (2) 20.

ciples applicable in the interpretation of documents of this nature.

The renunciation of rights authorized by § 4 of the Civil Code must be clear, conclusive and unequivocal. 1 Scaevola, *Código Civil*, (6th ed.), p. 255; 1 Manresa, *Comentarios al Código Civil* (6th ed.), p. 124; Judgments of the Supreme Court of Spain of November 17, 1931 and June 13, 1942. This should be so with greater reason when dealing with agreements relieving a person from liability for future negligent acts. Undoubtedly these agreements induce a want of care, for the highest incentive to the exercise of due care rests in a consciousness that a failure in this respect will fix liability to make whole for any injury caused.[2]

In American law where principles similar to ours in matters of agreement prevail, there have been adopted certain rules for the interpretation of releases, which we might well adopt here without impairing in any manner whatever our statutory right. It is a universally accepted rule that agreements exempting from liability for negligence are not favored by the law; *Fairfox Gas & Supply Co.* v. *Hadary*, 151 F. 2d 939; *Chicago & N.W. Ry. Co.* v. *Chicago Packaged Fuel Co.*, 195 F. 2d 467; *Johnston* v. *Fargo*, 77 N. E. 388; 6 Williston on *Contracts*, 4966; and should therefore be strictly construed against the party relying on them to avoid liability, and, if possible, their interpretation should be against exemption. 6 Williston, *op. cit.*, p. 4966; 17 C.J.S., § 262, p. 644. Clear and explicit language is required in the contract to absolve a person from the consequences of his own neglect. *Doughnut Mach. Corporation* v. *Bibbey*, 65 F. 2 634; *Gros* v. *General Inv. Co.*, 259 N. W. 557; *Otis Elevator Co.* v. *Maryland Casualty Co.*, 33 P. 2d 974; *cf. Leydecker* v. *Buntall*, 33 N. E. 349. Some courts maintain, in our opinion with reason, that the language exculpating from liability for negligence should be explicit, either expressly refer-

---

[2] See 12 American Jurisprudence, p. 683.

ring to negligence or indicating the intention in unequivocal terms. See cases cited in *Chicago & N. W. Ry. Co.* v. *Chicago Packaged Fuel Co., supra,* at pages 469 and 470.

■ The essential part of the agreement signed by appellant reads: "I donate my blood of my own volition to the Metropolitan Blood Bank to be used in such manner as this institution may see fit. I further release and discharge the Metropolitan Blood Bank . . . from all claim or demand of any kind whatever which I . . . may have . . . . . against it . . . *as a result of my blood donation,* to which I have submitted or will submit myself, and from any consequence arising directly or indirectly therefrom." (Italics ours.)

In our opinion, the claim or demand which appellant renounces by this agreement is that which may arise in his favor *as a result of his blood donation.* The results referred to are those generally arising or which may arise from the loss of blood, as for example, the malaise produced by weakness. We can not, however, consider as a result of the blood extraction a septicemia or blood poisoning caused by the use of unsterilized instruments. That rather results from negligence in the technique in taking blood. The renunciation by appellant concerns the former, not the latter. Neither do we believe that the cause of action herein exercised has been renounced by virtue of the final clause of the release, for the phrase "and any consequence arising directly or indirectly therefrom" adds nothing to the renunciation, since that phrase, which is of a general character, applies to that which has been particularly described in the document.

The case of *Boll* v. *Sharp & Dohme, Inc., supra,* involved a release which in its pertinent part reads:

"I certify that I have not consulted nor been attended by a doctor during the six weeks immediately preceding the date hereof, and that I am at my own risk submitting to the tests, examinations and procedures customary in connection with donations of blood. I agree that neither the Sharp & Dohme Donor Center, New York, nor any surgeons, physicians, techni-

cians, nurse, agents or officers connected with Sharp & Dohme, Incorporated, or who may be participating otherwise in this work, shall be in any way responsible for any consequences to me resulting from the giving of such blood."

It was held that that release did not free Sharp & Dohme from liability for consequences resulting from negligence in its technique in taking blood. It could be argued that in that case the release stated that the donor submitted to "the procedures customary in connection with donations of blood," while here the release contains no such statement. However, the appellees could not deny that they were bound to follow the customary procedures, for the document in question signed by appellant discloses that before the blood was extracted appellant underwent the customary preliminary tests. This is quite significant and strengthens the contention that the Bank was bound to follow the procedures customary in cases of this nature.

In view of the foregoing, the petition for summary judgment should be dismissed and, consequently, the judgment appealed from is reversed and the case remanded for further proceedings not inconsistent with this opinion.